Josephine LEONE and Josephine Leone
as Executrix of the Estate of Andrew
Leone, Plaintiffs,

v.

ADVEST, INC., Thomson-McKinnon Se-
curities, Inc., Prudential-Bache Securi-
ties, Inc., and Jerome Messana, Defend-
ants.

No. 85 Civ. 1283 (RLC).

United States District Court,
S.D. New York.

Dec. 10, 1985.

rate final judgment of forfeiture in favor of the United States.

Demov, Morris & Hammerling, New York City, for plaintiffs; Felice F. Mischel, of counsel.

Shanley & Fisher, P.C., New York City, for defendant Advest, Inc.; Matthew Farley, Robert Brehme, of counsel.

Sage Gray Todd & Sims, New York City, for defendant Thomson-McKinnon Securities, Inc.; John F.X. Peloso, Dorothy E. Hughes, of counsel.

Joel E. Davidson, New York City, for Prudential-Bache Securities, Inc.

Hertzog, Calamari & Gleason, New York City, for Jerome Messana; Loretta A. Preska, of counsel.

## OPINION

ROBERT L. CARTER, District Judge.

The four defendants in this securities fraud action present an omnibus of motions to the court in light of the recent Supreme Court decision in *Dean Witter Reynolds, Inc. v. Byrd*, —— U.S. ——, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985). In response, plaintiffs have moved to amend their complaint and seek sanctions pursuant to Rule 11, F.R.Civ.P.

*Facts*

█ The facts are taken from the amended complaint.[1] In 1982, Josephine Leone was a 58 year-old teletype operator living alone in Queens. She supported her elderly and infirm father, Andrew Leone, who lived in a senior citizens home. In May of that year, she went to Advest, Inc. ("Advest"), seeking to place their savings of $413,000 in secure, income-producing investments. At Advest, she was introduced to Jerome Messana, who promised her that she would become a millionaire within five years and would receive $30,000 per year, tax-free, from one investment alone. She signed a "Customer's Agreement" and opened two accounts at Advest, one in her name, and one jointly with her father. This "Customer's Agreement" contained a provision that "any controversy between [Advest and the Leones] arising out of or relating to this agreement or the breach thereof shall be submitted to arbitration in accordance with the rules then prevailing of the Arbitration Committee of the National Association of Securities Dealers, Inc., the American Arbitration Association, Board of Arbitration of the New York Stock Exchange or the Board of Arbitration of the American Stock Exchange, as I may elect." Over the next six months, Messana traded securities in these accounts, conducting $2 million worth of transactions. He also convinced Ms. Leone to invest funds in a commodities futures trading account and in three tax shelter programs. The Leones allege that by October, 1982, when Messana left Advest, his excessive and unsuitable trading had reduced their $400,000 investment to less than $240,000.

In October or November of 1982, Messana began to work for Thomson-McKinnon Securities, Inc. ("Thomson"). Messana visited Ms. Leone at her home and convinced her to transfer the Leones' accounts to Thomson. Messana continued to conduct their trading. Ms. Leone signed an "Agreement for Option Trading" on November 15, 1982. That agreement contained a provision that any dispute "arising out of the purchase, sale, endorsement, execution or other handling of puts and/or calls for our account shall be settled by

---

1. The court grants leave to amend the complaint. The amended complaint simply amplifies allegations—already suggested in the original complaint—of fraud in the inducement of the various written agreements signed by the Leones. Plaintiffs apparently viewed such averments as necessary to avoid arbitration in light of *Byrd*. Leave to amend pleadings should be "freely given where justice so requires." Rule 15(a), F.R.Civ.P. This is especially so where the significance of factual issues is altered by changes in law during the pendency of a litigation. *In Re Beef Industry Antitrust Litigation*, 600 F.2d 1148 (5th Cir.1979), *cert. denied*, 449 U.S. 905, 101 S.Ct. 280, 66 L.Ed.2d 137 (1980). As the discussion below makes clear, defendants have not been prejudiced by the amendment.

arbitration before the Arbitration Committee of the New York Stock Exchange, Inc., in accordance with the rules of that Committee." In February, 1983, both Leones signed an identical agreement for their joint account. Ms. Leone opened a third "Bond and Dividend" account and made further tax shelter investments, all on Messana's suggestion.

In addition to these accounts, Messana accepted $27,000 from the Leones for purchase of 25,000 shares of Keystone Medical Corp. ("Keystone"). He gave them a "Convertible Promissory Note" pledging repayment of the $27,000 or 25,000 shares of Keystone. The Leones received neither.

In November of 1983 the peripatetic Messana left Thomson and began to work for defendant Prudential-Bache Securities, Inc. ("Pru-Bache"). He again visited Ms. Leone and persuaded her to transfer the funds she had remaining at Thomson—now amounting to about $120,000—to Pru-Bache. She did so. Both Leones signed a "Joint Account Agreement" that stated, in part: "Any controversy arising out of or relating to my account, to transactions with or for me or to this agreement or the breach thereof, shall be settled for arbitration in accordance with the American Arbitration Association or the Board of Governors of the New York Stock Exchange as I may elect."

The Leones apparently closed their account with Pru-Bache in May, 1984. Under Messana's stewardship, their investment had dwindled to approximately $60,000.

The Leones brought this suit in February of 1985. Their nine-count complaint alleges violations of § 12(2) of the Securities Act of 1933 ("the Securities Act"), 15 U.S.C. § 77l(2), § 10(b) of the Securities Exchange Act of 1934 ("the Exchange Act"), 15 U.S.C. § 78j(b), and Securities and Exchange Commission Rule 10b–5 ("Rule 10b–5"), 28 C.F.R. § 240.10b–5 by Advest and Messana in Count One, by Thomson and Messana in Count Two, and by Pru-Bache and Messana in Count Four. Count Three seeks performance of the promissory note for Keystone stock. Count Five seeks rescission of the various agreements signed by the Leones. Count Six charges common-law fraud and breach of fiduciary and other duties by all defendants. Count Seven charges negligent mismanagement of the plaintiffs' accounts by all defendants. Count Eight charges violations of various provisions of New York law.[2] Finally, Count Nine charges Advest, Thomson and Pru-Bache with controlling person liability for Messana's actions under both federal securities and the common law.

This lengthy complaint has been met with a barrage of motions. Defendant Advest seeks: (a) to sever the claims against it, pursuant to Rule 21, F.R.Civ.P.; (b) to dismiss all securities claims pursuant to either Rule 12(b)(6) or Rule 9(b), F.R.Civ.P.; or, alternatively (c) to compel arbitration of all claims; or (d) to dismiss Counts Five, Six and Eight pursuant to Rule 9(b), F.R.Civ.P.; and (e) to receive costs and attorney's fees pursuant to Rule 11, F.R.Civ.P. Defendant Thomson asks the court to: (a) stay the action pending arbitration; (b) dismiss the complaint pursuant to either Rule 12(b)(6) or 9(b), F.R.Civ.P.; (c) grant summary judgment in Thomson's favor; (d) dismiss the state law claims pursuant to Rule 12(b)(1), F.R.Civ.P. Defendants Pru-Bache and Messana together urge us to compel arbitration, stay the non-arbitrable claims, and award them costs pursuant to Rule 11, F.R.Civ.P. and 28 U.S.C. § 1927. Finally, plaintiffs seek both to amend their complaint pursuant to Rule 15(a), F.R.Civ.P. and to receive costs and attorney's fees from all defendants.

*Discussion*

*I. Arbitration*

*A. Motions to Compel*

The Supreme Court's recent decision in *Dean Witter Reynolds, Inc. v. Byrd, supra,* leaves the court with precious little discretion in ruling on the motions to compel arbitration. The Court interprets the Arbitration Act of 1925 ("the Arbitration

---

**2.** N.Y.Gen.Bus.L. §§ 339–a, 339–e and 352–c (McKinney 1968).

Act"), 9 U.S.C. §§ 1 *et seq.*, as a "mandate[ ] that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed .... absent a ground for revocation of the contractual agreement." *Id.* at ——, 105 S.Ct. at 1241 (emphasis in original). Two issues confront the court: first, the existence of an enforceable arbitration agreement; second, which issues those agreements permissibly cover.

 Josephine and Andrew Leone signed four agreements that included arbitration clauses, one each with Advest and Pru-Bache, and two with Thomson.[3] Although they fail to specify any of the circumstances surrounding the signing of these agreements, the Leones allege fraud in their inducement. Such fraud, if proven, of course provides grounds for the non-enforcement of the arbitration clause. 9 U.S.C. § 2. However, the validity of a contract that provides for arbitration is an issue for the arbitrators themselves. *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967). The language of the Arbitration Act "does not permit the federal court to consider claims of fraud in the inducement of the contract generally." *Id.* at 404, 87 S.Ct. at 1806. The federal court may address allegations of fraud only if they are directed to the arbitration clause itself.[4] *H.W. Mosely v. Electronic & Missile Facilities*, 374 U.S. 167, 83 S.Ct. 1815, 10 L.Ed.2d 818 (1963).

 In *Mosely*, the Supreme Court dealt with an allegation that an arbitration clause was part and parcel of a fraudulent scheme. The contract between a prime contractor and a plumbing subcontractor was for work to be performed in the construction of two Air Force bases in Georgia. The arbitration clause, however, called for arbitration in New York, and was alleged to be part of "a fraudulent scheme to obtain a great amount of work and material from [the subcontractor] and other subcontractors without making payment therefor and to 'browbeat' [the subcontractor] and his fellow subcontractors into accepting much less than the value of their claims." *Id.* at 171, 83 S.Ct. at 1817. Under those circumstances, linkage between the defendant's fraud and the arbitration clause was apparent. Here, plaintiffs' sole assertion of fraud relating to the arbitration clause itself is based upon the defendants' purported duty, given the "unequal bargaining position between the defendants and the plaintiffs with regard to the agreements," Amended Complaint ¶ 37, to reveal that the agreements would waive the Leones' rights to litigate certain of their claims. Plaintiffs do not reveal the source of this duty. The court finds that the plaintiffs have failed to allege actionable fraud as to the arbitration clause itself. Thus, any arguments regarding fraud in the inducement of the agreements signed must be addressed to the arbitrators. The court grants the motions to compel arbitration.[5]

### B. Non-arbitrable claims

We turn now to decide which issues are non-arbitrable and must remain with the court. In *Wilko v. Swan*, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953), the Supreme Court held that claims under § 12(2) of the Securities Act were non-arbitrable. It is

---

**3.** The agreements with Thomson cover only options trading, a relatively small portion of the trading done in the Leones' accounts.

**4.** Plaintiffs argue a second ground permitting judicial examination of the contract: where the "alleged fraud was part of a grand scheme that permeated the entire contract," *Weinrott v. Carp*, 32 N.Y.2d 190, 344 N.Y.S.2d 848, 298 N.E.2d 42 (1973). None of the cases cited in the plaintiffs' brief, however, interprets the powers of the *federal* district court under the *Federal* Arbitration Act. Because that act creates a dis-

tinct body of federal substantive law on arbitrability, *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983), the New York and California cases cited are inapposite.

**5.** Although plaintiffs urge the court in their papers to stay the arbitration pending resolution of non-arbitrable claims, they have not so moved. In any event, such a stay would be inappropriate in light of the holding in *Byrd*.

undisputed that the court retains jurisdiction over plaintiffs' § 12(2) claims. Plaintiffs' other securities claims are another matter. In 1977, the Second Circuit extended the *Wilko* holding to federal securities claims arising under § 10(b) of the Exchange Act and Rule 10b–5. *Allegaert v. Perot,* 548 F.2d 432 (2d Cir.), *cert. denied,* 432 U.S. 910, 97 S.Ct. 2959, 53 L.Ed.2d 1084 (1977). However, defendants vehemently argue that the Supreme Court's decision in *Byrd, supra,* nullifies *Allegaert*'s holding and forces us to compel arbitration of all federal securities claims, save those arising under § 12(2).

*Byrd* holds that where arbitrable and non-arbitrable claims are mingled in a complaint, the district court must still compel arbitration of arbitrable claims. Defendants emphasize Justice White's concurrence to the unanimous decision. There, the Justice argued that:

> *Wilko*'s reasoning cannot be mechanically transplanted to the 1934 Act. While § 29 of that Act, 15 U.S.C. § 78cc(a), is equivalent to § 14 of the 1933 Act, counterparts of the other two provisions are imperfect or absent altogether. Jurisdiction under the 1934 Act is narrower, being restricted to the federal courts. 15 U.S.C. § 78aa. More important, the cause of action under § 10(b) and Rule 10b–5, involved here, is implied rather than express. See *Herman & MacLean v. Huddleston,* 459 U.S. 375, 380, and nn. 9–10 [103 S.Ct. 683, 686, and nn. 9–10, 74 L.Ed.2d 548] (1983). The phrase "waive compliance with any *provision of this chapter,*" 15 U.S.C. § 78cc(a) (emphasis added), is thus literally inapplicable. Moreover, *Wilko's* solicitude for the federal cause of action—the "special right" established by Congress, 346 U.S., at 431 [74 S.Ct. at 184]—is not necessarily appropriate where the cause of action is

judicially implied and not so different from the common law action.
— U.S. at —, 105 S.Ct. at 1244.

■ This concurrence does not alter the landscape of precedent that renders § 10(b) claims non-arbitrable in this circuit. First, as Justice White himself noted, the question of the arbitrability of Exchange Act claims was not before the Court in *Byrd.* Second, the arguments raised by Justice White had already been raised before the Second Circuit when it decided in *Allegaert* to extend *Wilko* to Exchange Act claims. *Allegaert,* 548 F.2d at 437. Justice White acknowledges that his arguments are derived from *dicta* in *Scherk v. Alberto-Culver Co.,* 417 U.S. 506, 94 S.Ct. 2449, 41 L.Ed.2d 270 (1974)—decided three years before *Allegaert*—which held § 10(b) claims arising out of *international* transactions arbitrable. The court sees no reason to anticipate that the Second Circuit would accept in 1985 an argument that it apparently rejected in 1977. Justice White's reiteration of *Scherk*'s *dicta* does not strengthen its precedential effect.

■ Moreover, the court is unable to distinguish *Allegaert* from the instant case. We perceive two possible means of doing so: by noting that the case in *Allegaert* was brought by a trustee in bankruptcy, or by noting that the securities fraud allegations there arose "in connection with one of the most celebrated brokerage house failures in the history of Wall Street." *Allegaert,* 548 F.2d at 436. Both must be rejected: the first, because the *Allegaert* court did not rely on the special status of the bankruptcy trustee in reaching its decision on the arbitrability of the securities law claims; the second, because it is both repugnant as a rule of law and inconsistent with the purpose of the Exchange Act to distinguish among defrauded investors on the basis of the magnitude of defendants' fraudulent activity. *But see McMahon v. Shearson/American Express Inc.,* 618 F.Supp. 384 (S.D.N.Y.1985) (MacMahon, J.).[6] Thus, the court must fol-

---

**6.** The court is not persuaded by *McMahon's* reasoning that the public interest—assuming, as we must, that public interest remains a relevant factor in considering arbitrability—can vary within the class of federal securities fraud cases by the number of investors defrauded. We note here that the reams of unpublished slip opinions on this point that defendants have too gracious-

low *Allegaert* and retain jurisdiction of all claims arising under Exchange Act § 10(b) and Rule 10b–5. The court also retains jurisdiction over all claims arising out of transactions not covered by any arbitration clauses, i.e. claims against Thomson arising out of transactions other than those in options.

### C. Motions to Stay Court Proceedings

■■■ The court grants the defendants' motions to stay the proceedings pending arbitration. Plaintiffs admit that the factual allegations underlying the federal and state law claims are identical. Plaintiffs' Memorandum at 41. A stay of these proceedings is warranted by considerations of judicial economy and convenience. *Home Life Insurance Co. v. Kaufman,* 547 F.Supp. 833 (S.D.N.Y.1982) (Sprizzo, J.). Plaintiffs' success at arbitration may render further proceedings on the federal claims unnecessary. Plaintiffs' failure in arbitration will not necessarily bar them from seeking relief on their federal claims. *Byrd,* 105 S.Ct. at 1243; *McDonald v. City of West Branch,* 466 U.S. 284, 104 S.Ct. 1799, 80 L.Ed.2d 302 (1984). *Byrd* accepts "piecemeal" litigation of federal and state claims. *Byrd,* 105 S.Ct. at 1243. It does not, however, require unnecessary duplication of effort where, as here, the facts underlying the claims are identical. *Weizman v. Adornato,* No. CV 84–3603 (E.D. N.Y. April 24, 1985).

Before imposing the stay, however, the court will rule on the remaining motions in order to clarify which claims remain in the case.[7]

### II. Advest's Motion to Sever

■■■ Advest seeks to sever the claims against it from the claims against the remaining defendants. It argues that the allegations against it are based on Messana's activities solely while he was employed by Advest, and are factually distinct from any claims based on his employment at Thomson and Pru-Bache. The argument, long on analogy and short on precedent, is unconvincing. Key issues such as Messana's knowledge and intent are clearly common to the charges against all defendants. Advest has not yet persuaded the court that any possible prejudice to it will outweigh the manifest convenience and economy of a joint trial. The motion is denied.

### III. Advest and Thomson Motions to Dismiss

Advest and Thomson seek to dismiss the federal securities claims against them under either Rule 9(b) or 12(b)(6), F.R.Civ.P. For the reasons discussed below, these motions are granted in part and denied in part.

### A. Section 12(2) claims

■■■ Both Advest and Thomson argue that § 13 of the Securities Act, 15 U.S.C. § 77m, requires dismissal of the § 12(2) claims. That section bars actions pursuant to § 12(2):

> unless brought within one year after the discovery of the untrue statement or omission, or after such discovery should have been made by the exercise of reasonable diligence.... In no event shall any such action be brought ... more than three years after the sale.

This action was brought on February 15, 1985. The Advest account was closed in October, 1982; that at Thomson in November, 1983. Plaintiffs do not state in their complaint when they discovered the misleading nature of the unnamed statements made to them. They have failed to plead facts showing that they fall within the limitations period. The § 13 limitations period is a substantive requirement of § 12(2) claims. *In re Caesar's Palace Litigation,*

---

· ly provided to the court are unpersuasive. Because of *Allegaert,* cases in other circuits are inapposite; unlike other courts, we do not write on a clean slate.

**7.** On April 26, this court instructed the parties to delay discovery in this case pending determination of the instant motions. On November 25, plaintiffs' counsel addressed a letter to the court urging that discovery commence. In light of the rulings discussed herein, the court must reject this informal request.

360 F.Supp. 366, 377 (S.D.N.Y.1973) (Weiner, J.). A failure to plead the limitations period is fatal to a claim, even where the purchases fall within the maximum three-year limitation period. *Homburger v. Venture Minerals, Inc.,* [1982 Decisions] Fed. Sec.L.Rep. (CCH) ¶ 98, 858 (S.D.N.Y.1982) (Haight, J.). The § 12(2) claims against Advest and Thomson are dismissed.

### B. Unsuitability Claims

■ Defendants Advest and Thomson argue that "unsuitability"—a broker's failure to recommend suitable securities for a client—does not state a cause of action under the federal securities laws. They correctly note that there is no implied private right of action for violations of the rules of the New York Stock Exchange ("NYSE") or National Association of Securities Dealers ("NASD"). *Jutter v. Rothschild, Unterberg, Towbin,* 554 F.Supp. 331 (S.D.N.Y.1983) (Knapp, J.). However, although plaintiffs recite various NYSE and NASD rules in their complaint, they do not rely on those rules to establish a separate ground for liability. In this circuit, unsuitability states a cause of action under § 10(b) and Rule 10b–5 where the plaintiff alleges that a broker knowingly or intentionally chose unsuitable investments for the client. *Clark v. John Lamula Investors, Inc.,* 583 F.2d 594 (2d Cir.1978). Despite the intellectual appeal of defendants' arguments against the unsuitability cause of action, they misstate the law of this circuit. Plaintiffs have adequately pleaded an unsuitability cause of action. The motions to dismiss, as to these claims, are denied.

### C. Churning

■ Advest and Thomson argue that the charges of "churning" made against them fail to meet the requirement of particularity imposed on fraud pleadings by Rule 9(b), F.R.Civ.P. Churning, or excessive trading in an account for the purpose of generating commissions, is a species of fraud subject to the special pleading requirements of Rule 9(b), F.R.Civ.P. The complaint sets forth the transactions made in the various accounts and the turnover rate. As the court recently found in a similar case, these averments adequately state a churning claim for the purposes of Rule 9(b), F.R.Civ.P. *Levin v. Shearson/American Express Inc.,* [1984–85 Decisions] Fed.Sec.L.Rep. (CCH) ¶ 92,080 (S.D.N.Y.1985) (Carter, J.). In addition, the complaint also sets forth the commissions paid, an alternative means of satisfying Rule 9(b), F.R.Civ.P.

■ The two defendants further fault the churning claims for failure to allege Messana's control over the plaintiffs' accounts. This lapse, they argue, renders the churning claim deficient in stating a cause of action pursuant to Rule 12(b)(6), F.R. Civ.P. This argument flies in the face of the complaint itself, which is rife with charges of Messana's insidious control over plaintiffs' investments over a two-year period. *See, e.g.,* Complaint, ¶¶ 13(f) & (g). The motions are denied as to the churning claims.

### D. Miscellaneous Arguments

■ Advest and Thomson seek dismissal of various claims on the ground that they are not "in connection with" the sale of a security. Thomson argues that misrepresentations relating to the opening of an investment account are not actionable under Rule 10b–5. Absent a showing of "vertical commonality" between broker and client, *Savino v. E.F. Hutton & Co., Inc.,* 507 F.Supp. 1225 (S.D.N.Y.1981) (Ward, J.), investment accounts are not securities. *Darrell v. Goodson,* [1979–80 Decisions] Fed.Sec.L.Rep. (CCH) ¶ 97,349 (McMahon, J.). Any claim of fraudulent misrepresentation relating to the opening of the investment accounts at Advest or Thomson must be dismissed, pursuant to Rule 12(b)(6), F.R.Civ.P.

■ Advest seeks dismissal of claims against it based on transactions in a commodities futures trading account. Claims of fraud relating to the sale of commodities are under the exclusive jurisdiction of the Commodity Exchange Act, 7 U.S.C. §§ 1 *et*

*seq. Gonzalez v. Paine, Webber, Jackson & Curtis,* [1982–84 Decisions] Comm.Fut.L. Rep. (CCH) ¶ 21,615 (S.D.N.Y.1982) (Werker, J.); *Reynolds v. Prudential-Bache Securities, Inc.,* [1984–85 Decisions] Fed.Sec.L.Rep. (CCH) ¶ 91,901 (S.D.N.Y.1985) (Pollack, J.). Any claim relating to the commodity account must therefore be dismissed, pursuant to Rule 12(b)(6), F.R. Civ.P.

Finally, Advest urges that claims relating to the purchase of tax shelters must be dismissed. This portion of the motion must be denied. Advest argues that it cannot be liable for any claim related to the tax shelters purchased by the Leones because they were purchased "elsewhere." It reasons that any liability for unsuitable investment advice regarding such shelters is Messana's alone. However, plaintiffs allege that Advest "controlled" Messana within the meaning of § 15 of the Securities Act and § 20 of the Exchange Act. Thus, this argument must be rejected.

### IV. Thomson Motion for Summary Judgment

Thomson urges that we grant summary judgment in its favor for claims pursuant to § 11(d) of the Exchange Act. The court does not interpret the complaint to assert § 11(d) as an independent basis for liability. Reference to the statute is apparently for the purpose of setting forth a relevant standard of conduct for determining the existence of fraud. Thomson's motion for summary judgment is denied.

### V. Rule 11 Motions

Plaintiffs and defendants Advest, Messana and Pru-Bache move for the imposition of Rule 11, F.R.Civ.P. sanctions. Given the disposition of the motions made above, sanctions for any of these parties would be inappropriate. All motions for sanctions are denied.

IT IS SO ORDERED.