Sidney **BRANTLEY** and
**Donna Brantley**

v.

**E.F. HUTTON & CO., INC.**

Civ. No. 86–1012.

United States District Court,
E.D. Pennsylvania.

March 30, 1989.

---

Steven M. Kramer, Philadelphia, Pa., for Sidney and Donna Brantley.

Leonard Barrack, Philadelphia, Pa., Gerald J. Rodos, F. Joseph Warin, Joseph A. Ingrisano, Washington, D.C., for E.F. Hutton & Co., Inc.

## OPINION

LOUIS H. POLLAK, J.

Defendant E.F. Hutton & Company, Inc. ("Hutton") moves to dismiss all of the counts of the plaintiffs' amended complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). On count two of the amended complaint, defendant moves in the alternative for summary judgment pursuant to Federal Rule of Civil Procedure 56. Defendant also requests sanctions pursuant to Federal Rule of Civil Procedure 11, arguing that the amended complaint contains information unrelated to plaintiffs' claim.

This case is the third of three cases—the first two were *Alfaro v. E.F. Hutton, Inc.*, Civ. No. 84–3276 (E.D.Pa.), and *Cecil v. E.F. Hutton, Inc.*, Civ. No. 86–1010 (E.D. Pa.)—arising from the failure of a limited partnership, Energy Resources 1981A–Ltd. ("Energy Resources").[1] Defendant sold interests in Energy Resources in 1981, and the limited partnership called its letters of credit in 1984. Plaintiffs Sidney and Donna Brantley are two of a group of investors who bought interests in the partnership

---

1. After class certification was denied in *Alfaro,* the defendant agreed to allow all potential plaintiffs to file separate complaints. *Cecil* and the present action followed. Eventually, both *Alfaro* and *Cecil* were settled.

based on allegedly fraudulent misrepresentations made by defendant and Energy Resources management. They contend that defendant, acting as Energy Resources' agent, deliberately concealed the gravity of the partnership's financial problems and the magnitude of the Brantleys' risk, causing the Brantleys and other investors to suffer substantial financial loss.

The Brantleys' original complaint alleged violations of section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), section 12(2) of the Securities Act of 1933, 15 U.S.C. § 77*l* (2), and section 4 of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1964. The complaint also alleged common law claims of fraud, breach of fiduciary duty, and negligence.

Defendant moved for dismissal of the original complaint. In a telephone conference, the Brantleys' counsel agreed to amend the complaint and, at the court's suggestion, to use as a model the revisions made in the second amended complaint filed in the parallel action of *Cecil v. E.F. Hutton, Inc.*, Civ. No. 86–1010 (E.D.Pa.) (Second Amended Complaint, Document # 20). The first amended complaint in *Cecil* had been couched in language almost verbatim with that of the original *Brantley* complaint and had been met with a virtually identical motion to dismiss.[2] The second amended *Cecil* complaint added substantial additional information about the facts of each plaintiff's transaction with Hutton.[3]

The Brantleys thereafter filed their amended complaint (hereinafter, the "complaint"). Defendant renewed its motion to dismiss, arguing that the complaint failed to correct the initial complaint's deficiencies. The Brantleys rested on their previous responses to defendant's motion to dismiss.

*1. The 10(b) claim*

Defendant first argues that count one—plaintiffs' 10(b) claim—should be dismissed because it fails to plead fraud with particularity as required by Federal Rule of Civil Procedure 9(b). That rule provides: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other conditions of mind of a person may be averred generally." Fed. R.Civ.Proc. 9(b). In order to support their 10(b) securities claim, plaintiffs must allege with particularity some material misrepresentation or non-disclosure of fact leading to manipulation or deception, *Santa Fe Industries, Inc. v. Green*, 430 U.S. 462, 474, 97 S.Ct. 1292, 1301, 51 L.Ed.2d 480 (1977), and scienter, that is, defendant's intention to deceive, manipulate or defraud, *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193, 96 S.Ct. 1375, 1380–81, 47 L.Ed.2d 668 (1976). Defendant claims that plaintiffs fail to provide the following particular facts about its alleged deception: the persons responsible for the allegedly fraudulent sale and their roles, the source of the alleged misrepresentations, and the time, place, and circumstances of the alleged misrepresentations.

Rule 9(b) is not to be applied so mechanically and narrowly that the liberal pleading standard of the Federal Rules of Civil Procedure is rendered meaningless. *See Seville Industrial Machinery Corp. v. Southmost Machinery Corp.*, 742 F.2d 786 (3d Cir.1984), *cert. denied*, 469 U.S. 1211, 105 S.Ct. 1179, 84 L.Ed.2d 327 (1985); *Thomas v. Tramiel*, 105 F.R.D. 568, 572–73 (E.D.Pa.1985) (fraudulent omissions). However, although the allegations of the complaint need not necessarily detail the "date, place, or time," of each allegedly fraudulent act, the complaint must provide at least a sufficient "alternative means of injecting precision and some measure of substantiation into [plaintiffs'] allegations

---

**2.** The first amended complaint in *Cecil* only added a plaintiff to the original complaint; it did not vary in substance.

**3.** The "new" paragraph 5 of the *Cecil* second amended complaint "provides the residence of each plaintiff, identifies the Hutton representative who sold the partnership interests to each plaintiff, identifies the entity responsible for the misrepresentations and omissions and describes the circumstances under which such misrepresentations were made to plaintiffs. Second Amended Complaint ¶ 5." *Cecil*, Document # 8, Plaintiffs' Motion Seeking Leave to File a Second Amended Complaint, at 6.

of fraud." *Seville,* 742 F.2d at 791. On the whole, complaints must be sufficient "to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior." *Id.*

■ Plaintiffs' complaint fails to meet even *Seville* 's liberal interpretation of Federal Rule 9(b)'s particularity requirement. Unlike the complaint in *Seville,* which referred to a unique piece of machinery as part of the challenged transaction, the present complaint contains no reference point that can help to establish (a) defendant's alleged misstatements or omissions of material facts or (b) the details of the purchase that underlies this entire action. In contrast to the level of detail provided by the second amended complaint in *Cecil* (the pleading this court identified to the Brantleys as a model for amending their complaint) the Brantleys' sole identification of themselves remains: "Plaintiffs are purchasers of limited partnership interests in Energy resources [sic] and purchased their interest through Hutton." Complaint ¶ 5.[4]

Paragraph 12 of the complaint contains the first claim of "misrepresentations to plaintiffs" by defendant's personnel—misrepresentations allegedly made not only to plaintiffs, but to investors nationwide. *See* complaint, ¶ 11. These misrepresentations related to the risk of investment in Energy Resources. However, the complaint does not connect any of these apparently oral statements to the Brantleys by specifying the following: who—or even which of defendant's alleged 245 nationwide offices—made these statements to plaintiffs; when the statements were made; and in what context and form. The complaint's two references in paragraphs 11 and 15 to "David Van Dyck [sic]," identified as "plaintiffs' " Hutton broker, do not allege that he made any misrepresentations to plaintiffs.[5]

Plaintiffs also claim that "the Private Offering Memorandum blatantly misrepresented that the offering, in compliance with Rule 146 of the SEC, would be limited to no more than 35 purchasers." Complaint at ¶ 13. However, plaintiffs do not allege whether, when, how, or from whom they received a copy of this Memorandum. The complaint does not recite the specific language of the alleged misrepresentation; nor is a copy of the Memorandum appended to the complaint—a device suggested in *Alfaro. Alfaro v. E.F. Hutton, Inc.,* 606 F.Supp. 1100, 1109 (E.D.Pa.1985). As a consequence, it is at best speculative what deception is being alleged and whether it is material.

■ Nor does the allegation, as pled, present a prima facie transgression of Rule 146—a rule which was rescinded as of June 30, 1982. The fact that an offering may not have been limited to 35 purchasers would not, without more, have violated Rule 146; the crucial question would be

---

4. Plaintiffs do not even identify their state of residence or the Hutton office that sold them their securities. Although plaintiffs assert that "many events" occurred in this district, Complaint ¶ 3, in their Reply to the Defendant's Original Motion to Dismiss, at 7 n. 2, they state that they are citizens of South Carolina, and at oral argument on the motion to dismiss they claimed that defendant made misstatements in telephone calls to them while they were in South Carolina. In addition, the Subscription Agreement with which plaintiffs purchased their Energy Resources shares included additional provisions applicable to offerees of certain states; a provision "for Pennsylvania offerees only" was crossed out and not signed by the Brantleys. Ingrisano Affidavit, Exh. 2, at 25–26.

These ambiguities bear on the question of which state's substantive law governs plaintiffs' pendent state claims. They also bear on the question whether the uniform federal statute of limitations for 10(b)(5) claims formulated by the Third Circuit in 1988 in *In re Data Access Systems Securities Litigation,* 843 F.2d 1537 (3d Cir.), *cert. denied,* —— U.S. ——, 109 S.Ct. 131, 102 L.Ed.2d 103 (1988), is to be applied retrospectively to this law suit, as it was on the facts presented in *Hill v. Equitable Trust Co.,* 851 F.2d 691, 697 (3d Cir.1988), *cert. denied,* —— U.S. ——, 109 S.Ct. 791, 102 L.Ed.2d 782 (1989). *Cf. Gruber v. Price Waterhouse,* 697 F.Supp. 859 (E.D.Pa.1988) (declining to apply *Data Access* retrospectively).

5. David Van Dyke was the Hutton broker for an earlier plaintiff, Santiago Alfaro, and was named in the *Alfaro* complaint. Defendant contends he had no connection with the Brantleys, a claim that plaintiffs have not denied. Defendant's Renewed Motion, at 5.

whether the offeror had "reasonable grounds to believe" that the number of purchasers would be so limited. Rule 146(g)(1), Reg. 230.146 (rescinded effective June 30, 1982).[6] However plaintiffs do not address defendant's scienter; to the contrary, their primary comment on the Memorandum is that "[i]n order to compel potential investors to secure their information from Hutton brokers, that memorandum was deliberately general, and did not provide potential investors with much of the more detailed information needed...." Complaint ¶ 9.

The allegations of the sale and alleged subsequent concealment of the financial condition of Energy Resources similarly fail to identify with any precision the alleged acts of wrongdoing. Plaintiffs only state that they "submitted a subscription agreement and check to one of E.F. Hutton's offices in mid–1981." Complaint, ¶ 14. The allegations in paragraphs 17 through 22 suggest details of activity— Hutton's conversations with *other* investors, mailings to 263 persons, letters from Energy Resources—but only paragraphs 19 and 20 facially connect the defendant's acts with the Brantleys. Neither of these two paragraphs identifies what was misleading or who communicated it.

"There is no reason that the defendants or the Court should be forced to edit or 'cut and paste' the plaintiff's complaint to be able to determine what misconduct is being alleged." *Wildman v. Wills,* 81 F.R.D. 588, 590 (E.D.Pa.1978). In this case, even an exhaustive analysis fails to yield sufficient information to meet the pleading requirements of Federal Rule 9(b) that are applicable to this 10(b) claim. *See Sum-*

*mers v. Lukash,* 562 F.Supp. 737, 739–40 (E.D.Pa.1983); *cf. Seville,* 742 F.2d at 791.

Plaintiffs' amended complaint is similar to, and presents the same basic allegations as, the complaint of the purported class in *Alfaro,* the first suit filed. In *Alfaro,* I found that some of the complaint's allegations of fraud were sufficient, but noted:

These conclusions regarding the sufficiency of the fraud allegations assume that this action will continue as a class action. Should this action not be certified to proceed in that manner, but only as an action on behalf of the two named plaintiffs, plaintiffs will be required to amend the complaint to provide much greater specificity.

*Alfaro,* 606 F.Supp. at 1109 n. 6. In addition, as noted above, the Brantleys were specifically advised to consider the second amended complaint in *Cecil* in revising their complaint. Notwithstanding the substantial guidance provided by *Alfaro* and *Cecil,* the Brantleys have not been able to frame an adequate 10(b) claim.

Accordingly, count one is dismissed.

## II. The 12(2) claim

██ Plaintiffs bring count two of their complaint under section 12(2) of the Securities Act of 1933, 15 U.S.C. § 77*l*. Defendant argues that this count should be dismissed for failure to state a claim because defendant is not a "seller" of securities within the meaning of the statute. In the alternative, defendant seeks summary judgment, contending that plaintiffs' claim does not satisfy the statute of limitations applicable to 12(2) actions.[7] I conclude that the 12(2) count is untimely.

---

**6.** The portion of Rule 146 on which plaintiffs apparently rely provided:
(g) Number of Purchasers
(1) The issuer shall have reasonable grounds to believe, and after making reasonable inquiry, shall believe, that there are no more than thirty-five purchasers of the securities of the issuer from the issuer in any offering pursuant to the rule.
Regulation § 230.146(g) (rescinded effective June 30, 1982).
It is also unclear from the complaint if the defendant sold to over 35 purchasers, or sold to over 35 *unexcluded* purchasers. Section (g)(2)

provides an extensive list of types of purchasers excluded from the 35. *E.g.,* § 230.146(g)(2)(i)(a) (spouses of purchasers do not count); § 230.146(g)(2)(i)(d) (purchasers who agree in writing to cash purchase in the aggregate amount of $150,000 or more do not count).

**7.** Two weeks after oral argument, plaintiffs wrote the court a letter objecting to consideration of summary judgment on the ground that this court "did not, as required under Rule 56, provide the requisite notice to the plaintiff that the Motion was to be converted." But plaintiffs

To be timely, a 12(2) claim must be brought within one year after the discovery of the untrue statement or omission or after such discovery should have been made by the exercise of reasonable care, and in no event "more than three years after the sale." 15 U.S.C. § 77m. Compliance with the statute of limitations must be apparent from the facts pleaded in the purchasers' complaint. *See Leone v. Advest*, 624 F.Supp. 297, 303–04 (S.D.N.Y.1985); *Kroungold v. Triester*, 407 F.Supp. 414, 419 (E.D.Pa.1975). The three-year limit on 12(2) actions is absolute; there is no equitable tolling of this maximum statutory period. *See Burkhardt v. Liberty*, 394 F.Supp. 1296 (W.D.Pa.1975), *aff'd without opinion*, 530 F.2d 963 (3d Cir.1976).[8]

The complaint's allegation of a 12(2) violation in paragraph 32 refers to the purchase that is described in paragraph 14 as:

> [p]laintiffs submitted a subscription agreement and check to one of E.F. Hutton's offices in mid 1981 in connection with their intended purchase of limited partnership interest in Energy Resources. Plaintiffs' actual purchase of an interest in Energy Resources did not occur until the date on which the partnership was formally activated and its subscription accepted by the general partner.

The Brantleys' recital that the "actual purchase" occurred not "in mid 1981" but when the "subscription [agreement was] accepted" is at odds with prevailing law. The sale of securities under 12(2) "occurs, and the statute begins to run, at the time plaintiff fixes his rights and obligations by executing the investment contract which is alleged to constitute the security." *Nielsen v. Professional Financial Management, Ltd.*, 682 F.Supp. 429, 437 (D.Minn. 1987); *accord Radiation Dynamics, Inc.*

*v. Goldmuntz*, 464 F.2d 876, 891 (2d Cir. 1972) (marking the point in 10(b) actions as that at "which the parties obligated themselves to perform what they had agreed to perform even if the formal performance of their agreement is to be after a lapse of time."); *Slagell v. Bontrager*, 616 F.Supp. 634, 636 (W.D.Pa.1985) (12(1) cause of action ran from no later than the date of purchaser's check), *aff'd without opinion*, 791 F.2d 921 (3d Cir.1986).

The record establishes that plaintiffs made an irrevocable commitment to purchase on June 22, 1981, the date they executed the Subscription Agreement and wrote a check. Defendant's Supplemental Memorandum, Ingrisano Affidavit, Exh. 2, 3. The Agreement provides, in part, that

> the undersigned hereby subscribes to a Limited Partner's interest in the Partnership equal to the number of interests and dollar amount set forth below, and the undersigned hereby agrees that this subscription shall be irrevocable and shall survive the death or disability of the undersigned. The dollar amount so subscribed is hereby irrevocably tendered as a contribution to the capital of the Partnership.

*Id.*, Exh. 2, ¶ 1. Sidney Brantley's answer to an interrogatory is consistent with this evidence, placing the date on which plaintiffs "purchased" their interest at June 22, 1981. Ingrisano Affidavit, Exh. 4, # 7. Plaintiffs do not dispute this date.

I conclude that, as a matter of law, June 22, 1981—the date of plaintiffs' execution of the Subscription Agreement and tender of their payment—marks the date of this sale. And that date was more than three years before the July 6, 1984 filing of the first *Alfaro* complaint. As there is no disputed issue of material fact regarding the statute of limitations of this action, I will

---

have not, in the months that have since elapsed, undertaken to respond to the motion.

**8.** I note that plaintiffs assume two conclusions essential to the timeliness of their 12(2) claim. First, plaintiffs assume that their allegations of fraudulent concealment, found inadequate in count one, are sufficient to warrant application of the maximum, three-year limitations period. Second, plaintiffs assume that their complaint

refers back to the filing date of the original complaint in *Alfaro*, July 6, 1984, rather than the filing date of the amended *Alfaro* complaint, April 23, 1985. I conclude that plaintiffs' action could not have been timely filed even assuming that plaintiffs could prevail on these contested issues, and I thus find that final disposition of this count on summary judgment is appropriate.

grant defendant's motion for summary judgment on count two, pursuant to Federal Rule of Civil Procedure 56.

## III. The RICO claim

Defendants move to dismiss count three of the amended complaint which alleges that defendant violated the Racketeer Influenced and Corrupt Organizations Act of 1970 ("RICO"), 18 U.S.C. § 1961 *et seq.* Defendants argue that the plaintiffs have failed properly to plead three essential elements of a RICO claim: (1) the alleged predicate acts of fraud, (2) a pattern of racketeering activity, and (3) a RICO conspiracy. Because the alleged predicate acts of the complaint are not pled with sufficient particularity, I will grant defendant's motion to dismiss count three of the complaint.

In the present case, plaintiffs allege that defendant participated in a fraudulent scheme to induce investment in, and then to conceal the financial status of, Energy Resources. In order to state a claim of a civil RICO violation pursuant to 18 U.S.C. § 1964, a plaintiff must allege "a pattern of racketeering activity" comprised of at least two acts of racketeering activity within a ten-year period. 18 U.S.C. § 1961(5). Crimes which may serve as predicate acts for a RICO action are enumerated at 18 U.S.C. § 1961(1).

All of the allegations of predicate acts in the complaint are contained in paragraph 37 which reads in full:

37. Defendant, individually and in conspiracy with others, engaged in a pattern of racketeering activity within the meaning of 18 U.S.C. Section 1961(5):

(a) defendant committed repeated acts of fraud in connection with the sale of limited partnership interests in Energy Resources to the plaintiffs herein, as more fully particularized above;

(b) defendant committed numerous acts of securities fraud, in violation of Section 5 of the Securities Act of 1933, 15 U.S.C. Section 70 [sic], and Section 12 of the Securities Act of 1934, 15 U.S.C. Section 77*l* [sic], in that it participated in the sale of unregistered securities that were not eligible for a private placement exemption because they were sold to more than 35 persons, in violation of SEC Rule 146;

(c) defendant knowingly and willfully transmitted or caused to be transmitted through the mails numerous materials, including, among others, the private placement memorandum, subscription documents for limited partnership interests, correspondence and reserve reports, as particularized above, and checks from plaintiffs to defendant for the purpose of purchasing limited partnership interests, in furtherance of its scheme to defraud, in violation of 18 U.S.C. Section 1341; and

(d) defendant transmitted or caused to be transmitted on numerous occasions sounds and other information, as particularized above, by wire communication in interstate commerce in the course of executing the fraudulent scheme described above, in violation of 18 U.S.C. Section 1343.

Thus, all of these alleged predicate acts are offenses involving fraud. As such, these predicate acts must be pleaded with sufficient particularity to conform with Federal Rule of Civil Procedure 9(b). *See Saporito v. Combustion Engineering,* 843 F.2d 666, 675 (3d Cir.1988). Thus the complaint must, at the very least, provide defendant with a minimum level of notice as to the communications which are alleged to be the predicate criminal acts, and allege the elements of those acts, including scienter. *Beck v. Manufacturers Hanover Trust Co.,* 650 F.Supp. 48, 50 (S.D.N.Y.1986), *aff'd* 820 F.2d 46 (2d Cir.1987), *cert. denied,* —— U.S. ——, 108 S.Ct. 698, 98 L.Ed.2d 650 (1988).[9]

---

9. The liberal pleading standard of the Federal Rules of Civil Procedure is thus in some tension with the stricter standards of pleading a criminal indictment. *See Ray v. Karris,* 780 F.2d 636, 645 (7th Cir.1985). Many courts require the stricter standard of pleading. *See, e.g., Dan River, Inc. v. Icahn,* 701 F.2d 278, 291 (4th Cir.1983) (criminal intent must be shown for mail fraud or securities fraud predicates); *Acampora v. Boise Cascade Corp.,* 635 F.Supp.

The alleged acts of fraud in paragraph 37(a) refer back to the allegations upon which count one, discussed above, is based. The lack of particularity of count one carries over to 37(a).

Paragraph 37(b) charges violations of various securities laws as a result of defendant's alleged violation of Rule 146, which, until rescinded effective June 30, 1982, defined a registration exemption for certain non-public offerings. Again, the pleading defects with respect to the Rule 146 violation alleged in count one apply here.

Paragraph 37(c) and (d) allege acts of mail and wire fraud. Neither provides any details of the alleged communications, other than to refer to the same allegations that underlie the claim of fraud and fraudulent concealment in count one—allegations whose lack of particularity has been discussed. These pleadings of mail and wire fraud are, therefore, insufficient to support plaintiffs' RICO claim. *See Moss v. Morgan Stanley, Inc.*, 719 F.2d 5, 19 (2d Cir.1983), *cert. denied*, 465 U.S. 1025, 104 S.Ct. 1280, 79 L.Ed.2d 684 (1984); *United States v. Dixon*, 536 F.2d 1388, 1399 (2d Cir.1976).

As with count one, plaintiffs have had ample notice of the necessity of amending their allegations of fraud and other predicate acts. *See Alfaro*, 606 F.Supp. 1118–19 (finding allegations of fraud insufficient to support RICO claim, even in class action context). Although plaintiffs have expanded their allegations of predicate acts beyond the original *Alfaro* complaint to include the general claim of fraud in paragraph 37(a), the Rule 146 claim in paragraph 37(b), and a list of generally identified documents in paragraph 37(c), they appear to have merely copied these embellishments—virtually verbatim, including its inaccurate citation—from the RICO count in *Cecil*. *Compare* complaint ¶ 37 *with Cecil* Second Amended Complaint, Document # 8, ¶ 39 (also claiming a violation of "15 U.S.C. Section 70 [sic]"); *Alfaro* com-

plaint, ¶ 34. What the Brantleys failed to copy from the *Cecil* complaint, however, was the essential provision of the details of the fraudulent acts that formed the basis of both the alleged securities violations and the predicate acts underlying the RICO count. As noted earlier in this opinion, the second amended complaint in *Cecil* provided, in paragraph 5, a reliable outline of the types of facts about this very transaction that a properly pleaded allegation of fraud would require.

Therefore, I will also grant defendant's motion to dismiss count three of the complaint for failure to plead predicate acts with sufficient particularity.

## IV. *Plaintiffs' pendent state claims*

Jurisdiction of this court is asserted under federal question jurisdiction based on counts one through three. As each of those claims is now dismissed, I decline to exercise pendent jurisdiction over the remaining state claims. *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1986).

## V. *Defendant's motion for Rule 11 sanctions*

 Finally, defendant moves for impositions of sanctions under Federal Rule of Civil Procedure 11 providing that "to the best of the signer's knowledge, information, and belief formed after reasonable inquiry [the pleading] is well grounded in fact...." Defendant argues, referring to *Alfaro*, that "plaintiffs' Amended Complaint contains factual information related to a separate action that is totally unrelated to plaintiff's claim." Defendant's Reply Memorandum in Support of Renewed Motion, at 3.

This contention does not, on its face, support a finding of unreasonable or bad faith behavior warranting imposition of Rule 11 sanctions. It is not surprising that

---

66, 68 (D.N.J.1986) (all elements of predicate acts must be pled).

However, the burden of proof of the underlying act is a preponderance of the evidence, rather than proof beyond a reasonable doubt.

*United States v. Local 560 the International Brotherhood of Teamsters*, 780 F.2d 267, 279 n. 12 (3d Cir.1985), *cert. denied*, 476 U.S. 1140, 106 S.Ct. 2247, 90 L.Ed.2d 693 (1986).

substantial parts of the complaint resemble those of *Alfaro* and *Cecil,* as the Brantleys allege the same conspiracy and pattern of activity that formed the basis of those actions.

However, the *Brantley* complaint does contain two misstatements. First, paragraph 7 states that defendant received commissions in excess of $1,000,000 and an expense allowance of approximately $300,-000 in connection with the marketing of Energy Resources to plaintiffs. At oral argument, plaintiffs' counsel admitted that this allegation did not refer to the "plaintiffs," Complaint ¶ 7, that is, the Brantleys, but to all possible purchasers of Energy Resources from defendant. Another apparent misstatement is similarly based on the complaint filed in the separate action in *Alfaro v. E.F. Hutton, Inc.,* Civ. No. 84–3276 (E.D.Pa.). At paragraph 11, plaintiffs claim that their broker was "David Van Dyck [sic]." Defendants contended, both in their original motion to dismiss and at oral argument, that Mr. Van Dyke was plaintiff Alfaro's broker, and had no relation to the Brantleys. The Brantleys did not deny this correction at oral argument or in subsequent filings.[10] *See* Defendant's Motion at 3, 10.

These misstatements certainly seem unwarranted. Nonetheless, they are not of so integral and pervasive a character as to taint the entire pleading. *See Eavenson, Auchmuty & Greenwald v. Holtzman,* 775 F.2d 535, 540 (3d Cir.1985); *cf. Teamsters Local Union No. 430 v. Cement Express, Inc.,* 841 F.2d 66 (3d Cir.), *cert. denied,* —— U.S. ——, 109 S.Ct. 128, 102 L.Ed.2d 101 (1988). Consequently, I will deny defendant's motion for Rule 11 sanctions.

An appropriate order follows.

### ORDER

For the reasons stated in the accompanying memorandum, it is hereby ORDERED and DIRECTED that:

1) Defendant's motion for summary judgment dismissing count two of plaintiffs' amended complaint as barred by the statute of limitations is GRANTED;

2) Defendant's motion to dismiss the remaining counts of plaintiffs' amended complaint for failure to state a claim with sufficient particularity is GRANTED; and

3) Defendant's motion for Rule 11 sanctions is DENIED.

---

10. Consistent with this, plaintiffs' answers to interrogatories and their Subscription Agreement identify several of defendant's representatives, but never mention Mr. Van Dyke. Ingrisano Affidavit, Exh. 4, # 8, Exh. 2, at 5.