**Rivka RUBASHKIN and Joseph Rubashkin, Plaintiffs,**

v.

**PHILIPS, APPEL AND WALDREN INC., Broadcort Capital Corp., and Moore and Schley, Cameron & Co., Defendants.**

No. 89 Civ. 0865 (PKL).

United States District Court, S.D. New York.

Oct. 23, 1989.

Brauner Baron Rosenzweig Kligler Sparber Bauman & Klein, New York City (Mel P. Barkan, of counsel), for plaintiffs.

Weiner Timins & Lesniak, Roseland, N.J. (Wayne H. Weiner, of counsel), for defendant Broadcort Capital.

## ORDER & OPINION

LEISURE, District Judge:

Plaintiffs bring this lawsuit alleging that defendants violated Section 12(2) of the Securities Act of 1933, Section 10(b) of the Securities Exchange Act of 1934, Federal Reserve Regulation T, the Rules of the Options Clearing Corporation, and various common law doctrines of fraud, negligence, contract, and fiduciary duty. Defendant Broadcort Capital Corp. ("Broadcort" or "defendant," when referring to the instant motion) now moves this Court to dismiss certain of plaintiffs' allegations for failure to state a claim under Fed.R.Civ.P. 12(b)(6), or, in the alternative, for disposition by summary judgment under Fed.R.Civ.P. 56. Broadcort also asks that this Court compel arbitration of any claims not thereby disposed.

## BACKGROUND

Plaintiffs maintained securities brokerage accounts with defendant Philips, Appel and Walden, Inc. ("Philips, Appel"). Defendant Broadcort acted as a clearing firm for Philips, Appel, keeping records and performing other custodial work, as well as financing margin accounts. In these capacities Broadcort came to perform duties related to plaintiffs' accounts.

Plaintiffs had previously executed a Customer Agreement and an Option Agreement with Merrill Lynch, Pierce, Fenner & Smith Inc. ("Merrill Lynch"), related to their brokerage accounts. After these agreements had been finalized but before the events giving rise to plaintiffs' allegations, Merrill Lynch transferred its duties related to plaintiffs' accounts to its subsidiary, Broadcort. Thus the agreements are now applied to the relationship between plaintiffs and defendant Broadcort Capital. Both the Customer Agreement and the Option Agreement contain provisions stating that all disputes arising from maintenance of the accounts are to be resolved by arbitration before the New York Stock Exchange. Either party may trigger the arbitration clauses by serving the opposing party with written notice of its intent to arbitrate. Customer Agreement, ¶ 11; Option Agreement, ¶¶ 9–10.

On February 7, 1989, plaintiffs filed a complaint with this Court alleging misconduct related to the administration of their accounts. Plaintiff Rivka Rubashkin

claims that in the period of the October 1987 stock market crash, defendants improperly sold stock in her account and closed out puts, amounting to a loss of $96,427. Complaint, ¶¶ 10–18. Plaintiff Joseph Rubashkin alleges that on or about the same time defendants closed out options in his account without any authorization, thus causing him losses of $30,152. Complaint, ¶¶ 19–27. Both plaintiffs claim that defendants could have protected themselves through other means, and that the actions taken amounted to "unauthorized panic transactions." Complaint, ¶¶ 16, 25. Defendants' actions "were part of a device, scheme or artifice or act, practice or a course of business which were intentionally employed by defendants Philips, Appel and Broadcort to defraud plaintiff[s] which operated as a fraud upon [them]." Complaint, ¶¶ 18, 26.

Soon after the lawsuit had been filed in this Court, defendant Broadcort contacted plaintiffs and requested that all claims be resolved through arbitration pursuant to the Customer and Option Agreements. Defendants received no response from plaintiffs to three letters and several phone calls, and on March 31, 1989, the final day for answering or otherwise moving as to the complaint, defendant Broadcort filed this motion for dismissal of certain claims and to compel arbitration of any other claims remaining before the Court. On May 1, 1989, plaintiffs' counsel sent a letter to this Court expressing his desire to arbitrate the dispute "rather than to engage in lengthy, protracted and procedural litigation." (Letter from Mel P. Barkan, Esq., to the Court dated May 1, 1989). On May 3, defendant Broadcort wrote to the Court stating that it did not wish to withdraw its motion to dismiss due to the efforts it had expended and its repeated offers to arbitrate the dispute before filing the motion. (Letter from Wayne H. Weiner, Esq., to the Court dated May 3, 1989). At a May 12 conference before this Court,

it was agreed that the Court would consider Broadcort's written motion.

## DISCUSSION

Plaintiffs argue that under *Dean Witter Reynolds Inc. v. Byrd,* 470 U.S. 213, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985), this Court cannot decide any of the claims in this case which fall under the arbitration agreement between the parties. *Dean Witter* interprets the Federal Arbitration Act, 9 U.S.C. §§ 1–14, as requiring courts to strictly honor arbitration agreements. Upon motion of either party, a court must refer all arbitrable claims to the arbitrator. *Dean Witter, supra,* at 219, 105 S.Ct. at 1241. Even if two separate proceedings result, with arbitrable claims in front of the arbitrator and non-arbitrable claims in front of the court, the Supreme Court thought it of paramount importance to honor the private agreement between the parties. *Id.* at 219–21, 105 S.Ct. at 1241–43.

The potential for inefficiency due to split proceedings has been mitigated due to the increased arbitrability of legal claims. In *Rodriguez De Quijas v. Shearson/American Exp. Inc.,* — U.S. ——, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989), the Supreme Court overruled *Wilko v. Swan,* 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953), and held that all claims under the Securities Act of 1933 and the Securities Exchange Act of 1934 are arbitrable. *Dean Witter* enforced an agreement between the parties to arbitrate all state and common law claims. In most securities cases, therefore, all the issues before the district court will be arbitrable, allowing courts to honor the arbitration agreement without creating inefficient split proceedings.

In the case at bar, defendant Broadcort has moved first for dismissal of certain of plaintiffs' claims under Rule 12(b)(6) and to compel arbitration regarding the rest of the claims.[1] On any issues that this Court declines to dismiss for failure to state a claim, defendant asks that this Court refer

---

1. Broadcort has moved to dismiss plaintiffs' Section 12(2) claim for insufficient pleadings and plaintiffs' claims under Federal Reserve Regulation T, the Rules of the Options Clearing Corporation, and defendant's internal house margin rules for lack of a private cause of action. Broadcort has moved to compel arbitration on all state and common law claims.

them to arbitration as well. Plaintiffs have not formally moved or cross-moved to compel arbitration but have only indicated their current desire to arbitrate in their answering papers and letters to the Court. The Court finds this sufficient to trigger the arbitration agreement between the parties. The mandate of *Dean Witter* is to enforce private arbitration agreements, and the Court will follow this mandate unless there is clear consent by both parties to litigate the dispute.

Defendant Broadcort cites two instances where Courts in this District have entertained Rule 12(b)(6) motions on certain claims and compelled arbitration as to others. In *Intre Sport Ltd. v. Kidder, Peabody & Co., Inc.*, 625 F.Supp. 1303 (S.D.N.Y.1985), *aff'd*, 795 F.2d 1004 (2d Cir.1986), *cert. granted and judgment vacated*, 482 U.S. 922, 107 S.Ct. 3203, 96 L.Ed.2d 690 (1987) (case remanded to the Second Circuit in light of *Shearson/American Express v. McMahon*, 482 U.S. 220, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987)) and *Leone v. Advest, Inc.*, 624 F.Supp. 297 (S.D.N.Y.1985), this Court allowed dismissal of certain claims before referring the remainder of the claims to an arbitrator. However, as plaintiffs point out, both cases were decided at a time when the arbitrability of RICO and securities claims was in doubt. The Courts dismissed those claims which they thought were non-arbitrable under Supreme Court caselaw.[2]

In addition, in the cases cited by defendant, the plaintiffs therein resisted arbitration throughout the District Courts' consideration of the motions. In the case at bar, plaintiffs now agree to arbitrate, and the only factor preventing the current consent of defendant seems to be its efforts expended on the pending motion. It is unfortunate that defendant had to undertake these efforts due to plaintiffs' vacillation,

but this Court believes that the most proper and just course of action now is to refer all claims to the arbitrator, as should have been done from the outset.

### CONCLUSION

All claims now before this Court are hereby referred to the arbitrator pursuant to the agreement signed by the parties. The proceedings before this Court are stayed pending arbitration.

SO ORDERED.

---

**2.** In *Intre Sport,* Judge Sweet dismissed only the plaintiff's civil RICO and Section 12(2) claims. The opinion was handed down before the Supreme Court's decisions in *Shearson/American Express v. McMahon* and *Rodriguez De Quijas v. Shearson/American Exp. Inc.,* which finally established the arbitrability of federal securities laws issues.

In *Leone* (Carter, J.), the Court clearly followed the mandate of *Dean Witter* and compelled arbitration of all claims it thought to be arbitrable. *Leone, supra,* at 300–01. Those claims on which it entertained motions to dismiss were all under federal securities laws. The Court believed that *Wilko v. Swan,* which had held these claims to be non-arbitrable, was still good law.