Steven **BERK**, Gerhard Carl, Lawrence Miller, Joseph A. Startare, Allan H. Gordon, Gerald Esner, Carl Reinhart, E. David First, and Holzhaur Tile Company, Inc., and Charles Fox, individually and on behalf of a class

v.

**ASCOTT INVESTMENT CORPORATION**, Michael J. Asbell, Philip S. Cottone, M. Brad Ingerman, Laventhol & Horwath, Whitestone Savings, F.A., Fireman's Insurance Company of Newark, New Jersey.

Civ. A. No. 88–9000.

United States District Court,
E.D. Pennsylvania.

March 6, 1991.

William M. Lashner, Lashner, Victor & Maschmeyer, Robert M. Greenbaum, Philadelphia, Pa., for plaintiff.

Paul F.X. Gallagher, Philadelphia, Pa., Louis G. Corsi, Stephen V. Kovarik, Susan C. Zuckerman, Siff, Rosen & Parker, P.C., New York City, for Whitestone Savings, F.A.

Ira Silverstein, Philadelphia, Pa., for Firemen's Ins. Co. of Newark, New Jersey.

Louis G. Corsi, Siff, Rosen & Parker, P.C., New York City, for Resolution Trust Corp. No. 27.

Daniel E. Bacine, Barrack, Rodos & Bacine, Philadelphia, Pa., for Ascott Inv. Corp., Michael J. Asbell, Philip S. Cottone, Brad M. Ingerman.

Kevin Norris, Philadelphia, Pa., for Laventhal & Horwath.

## MEMORANDUM AND ORDER

VAN ANTWERPEN, District Judge.

(1.) *Background*

The plaintiffs have brought the instant case under the following statutes: sections 12 and 15 of the Securities Act of 1933, 15 U.S.C. §§ 77*l*, 77*o*, 77q(a); sections 10(b) and 20 of the Securities Exchange Act of 1934 and SEC Rule 10b–5, 15 U.S.C. §§ 78j(b) and 78t, 17 C.F.R. § 240.10b–5; The Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962; and state laws pertaining to securities. Plaintiffs also allege a common law breach of fiduciary duty.

The plaintiffs seek to represent a class of people and entities who invested in an entity known as "Orlando Investors, L.P.", a limited partnership (hereinafter "Orlando Investors"), which was formed for the purpose of providing investment opportunities and tax benefits to its partners in the purchase of a property known as the Pacesetter Apartments in Orlando, Florida. Defendant Ascott Investment Corporation owns and operates various types of real estate projects and is a general partner of Orlando Investors. Defendants Cottone, Asbell and Ingerman are shareholders and officers of Ascott Investment Corporation. Defendant Laventhol and Horwath,[1] is a certified public accounting firm, which is alleged to have performed a review of the financial forecasts of management of Orlando Investors, which review was included in the offering material submitted to the plaintiffs. Defendant Whitestone Savings, F.A. is a bank which allegedly made a secured loan to Orlando Investors, which the partnership used to finance the limited partners' capital contributions. As security for that loan, Whitestone Savings received an assignment of the investors' recourse notes, which were supported by a surety bond in Whitestone's favor to protect Whitestone in the event of an investor's nonpayment. The complaint further alleges that defendant Firemen's Insurance Company of Newark, New Jersey issued the surety bonds to the defendant Whitestone Savings, obligee on behalf of the plaintiffs-limited partners in Orlando Investors.

In March, 1988, Orlando Investors filed for protection from its creditors under Chapter 11 of the Bankruptcy Code. Several months thereafter, the plaintiffs brought this suit. Presently before the court are the defendants' Motions to Dismiss[2] or in the Alternative, for Summary Judgment. We shall address these challenges—with the exception of those raised by Laventhol and Horwath who are currently under the protection of the Bankruptcy Code—in the opinion which follows.

Before tackling these challenges, however, we must first decide whether to consider the defendants' motions as motions to dismiss, pursuant to Fed.R.Civ.P. 12(b)(6), or as motions for summary judgment, pursuant to Fed.R.Civ.P. 56. For a number of reasons, we believe that, at this point in the progress of this litigation, it would be preferable to treat the defendants' motions as motions to dismiss, pursuant to Fed.R. Civ.P. 12(b)(6).

First, no discovery has yet been taken in the instant case, which is based upon alleged violations of state and federal securities laws, the RICO statute and common law causes of action. As the court stated in *Allen Organ Co. v. North American Rockwell Corp.*, 363 F.Supp. 1117 (E.D.Pa. 1973):

> [T]he Courts have held that summary procedures should be used sparingly in complex anti-trust and securities litigation where motive and intent play leading roles and the proof is largely in the hands of the defendants. See *Fortner Enterprises v. United States Steel Corp.*, 394 U.S. 495, 500, 89 S.Ct. 1252 [1257] 22 L.Ed.2d 495 (1969) (Antitrust); *Poller v. Columbia Broadcasting*, 368 U.S. 464, 473, 82 S.Ct. 486 [491] 7 L.Ed.2d 458 (1962) (Antitrust); *Schoenbaum v. Firstbrook*, 405 F.2d 215, 218 (2d Cir.1968) (Securities); *Kubik v. Goldfield*, 479 F.2d 472, p. 477 n. 10 (3d Cir.1973) (Securities). In the instant case, we have before us a series of sophisticated contractual undertakings and complex allegations of fraud, conspiracy and contractual breaches. Under these circumstances, we agree with the cases

---

1. Laventhol and Horwath filed for bankruptcy in November, 1990. Although the debtor, Laventhol and Horwath, falls under the protection of the automatic stay provision found at 11 U.S.C. § 362(a), this action continues against the other defendants in the case at bar. *Greene & Kellogg, Inc. v. Oxford Hospital, Inc.*, 95 B.R. 26 (E.D.Pa.1989).

2. In the instant case, the plaintiffs have filed an Amended Complaint. The differences between the original and the amended complaint are minor: the addition of another plaintiff and the renumbering of certain paragraphs. Thus, any disposition of the challenges raised by the defendants to the original complaint will also apply to the amended complaint.

cited by plaintiff to the extent that disposition under the summary judgment procedures of F.R.Civ.P. 56 would be inappropriate at this time, especially absent discovery on the part of the plaintiff.... *Id.* at 1124.

We believe that this is a sensible approach and that an opportunity for adequate discovery should be provided before the court entertains a motion for summary judgment in the case at bar.

Second, although many of the defendants have appended documents to their briefs, none of them have attached affidavits attesting to the authenticity of these documents. Such proof is necessary in order to present this documentation properly in a motion for summary judgment. *Nolla Morell v. Riefkohl,* 651 F.Supp. 134, 140 (D.Puerto Rico 1986) (in considering motion for summary judgment, court excluded, under Fed.R.Civ.P. 56(e) and Fed.R.Evid. 901, documents filed by defendants unaccompanied by affidavits attesting to their validity).

If ever we are to consider a motion for summary judgment in the instant case, we would prefer to do so with properly authenticated documents and a full record compiled after an appropriate period of discovery. We shall, therefore, treat the defendants' motions as motions to dismiss pursuant to Fed.R.Civ.P. 12(b)(6).

Having decided to entertain only the defendants' motions to dismiss, we next must decide whether Ascott Investment Corporation, and its officers and shareholders, Michael J. Asbell, Philip S. Cottone, and M. Brad Ingerman (the "Ascott defendants"), are correct in arguing that the contents of a certain Offering Memorandum put forward by them may be considered by the court. In the amended complaint, the plaintiffs allege that the Ascott defendants made written misrepresentations not only in the Offering Memorandum, dated September 3, 1985, with its attached exhibits, but also in other documents, *viz.:* the Amended and Restated Agreement of Limited Partnership; the Orlando Investors, L.P. Brochure; and correspondence.

(Amended Complaint, ¶ 40). The Offering Memorandum is, thus, only one out of a number of documents where misrepresentations were allegedly made. No one has appended copies of these other documents to any briefs and they are not presently before the court.

Moreover, the copy of the Offering Memorandum that is before the court was attached to the defendants' brief. It, therefore, stands as a separate, unauthenticated document. In general, such a document would not be considered by the court. If, however, a document is incorporated by reference into a complaint, it may be considered. *Goldman v. Belden,* 754 F.2d 1059, 1065–1066 (2d Cir.1985). "[L]imited quotation does not constitute incorporation by reference." *Id.* at 1066. In the case at bar, the paragraph that pertains to the Offering Memorandum (Amended Complaint, ¶ 41(a)–(k)) merely summarizes the representations allegedly made therein. No direct quotation is made. We do not believe that the Offering Memorandum has been actually incorporated by reference.

It is true that when a plaintiff has admitted the authenticity of a document proffered by a defendant, a court may consider that document in ruling on a motion under Fed.R.Civ.P. 12(b)(6). *Bechtel Corp. v. Local 215, Laborers' International Union of North America, AFL–CIO,* 405 F.Supp. 370, 377 n. 1 (M.D.Pa.1975), *modified on other grounds,* 544 F.2d 1207 (3d Cir.1976). In the instant case, the plaintiffs have objected to the court's consideration of the Offering Memorandum on the grounds discussed above. When they address the defendants' reference to the contents of the Offering Memorandum, they do so only upon the contingency that the court should find the Offering Memorandum incorporated by reference into the complaint. We have not so found. Even if we were to take the plaintiffs' discussion of the defendants' references to the Offering Memorandum as a tacit acknowledgement of that document's authenticity, we would still be confronted with the allegations in the complaint that misrepresentations were made elsewhere as well. We, therefore, do

■ find that consideration of the Offering Memorandum at this point in the litigation will help to resolve the motion to dismiss.

Fed.R.Civ.P. 12(b)(6) allows a court to dismiss "for failure to state a claim upon which relief can be granted." The criteria which a court must use in deciding a motion to dismiss under Fed.R.Civ.P. 12(b)(6) are clear. "In reviewing a motion to dismiss a complaint for failure to state a claim under Fed.R.Civ.P. 12(b)(6), all allegations in the complaint and all reasonable inferences that can be drawn therefrom must be accepted as true and viewed in the light most favorable to the non-moving party. *Wisniewski v. Johns Manville Corp.*, 759 F.2d 271, 273 (3d Cir.1985); *Rogin v. Bensalem Twp.*, 616 F.2d 680, 685 (3d Cir. 1980)." *Sturm v. Clark*, 835 F.2d 1009, 1011 (3d Cir.1987). Also, "in deciding a Rule 12(b)(6) motion, factual allegations of the complaint are to be accepted as true and the complaint should be dismissed only if it appears to a certainty that no relief could be granted under any set of facts which could be proved. Reasonable factual inferences will be drawn to aid the pleader. *Amalgamated Transit Union v. Byrne*, 568 F.2d 1025, 1031 (3d Cir.1977) (in banc) (Aldisert, J., dissenting); *Knuth v. Erie–Crawford Dairy Cooperative Ass'n*, 395 F.2d 420 (3d Cir.1968)." *D.P. Enterprises v. Bucks County Community College*, 725 F.2d 943, 944 (3d Cir.1984).

With these standards in mind, we shall proceed to address the defendants' motions to dismiss the complaint. The issues raised by each defendant are many. Accordingly, we shall try to address each issue within a heading devoted to that issue and the particular defendants concerned.

(2.) *Challenge by Defendants Whitestone Savings, F.A. and Firemen's Insurance Company of Newark, New Jersey to Plaintiffs' Claims Under Section 12(2) of the Securities Act of 1933, 15 U.S.C. § 77l*

Upon the consent of the plaintiffs, the claims under Section 12(2) of the Securities Act of 1933, 15 U.S.C. § 77l, against the above-named defendants will be dismissed.

(3.) *Challenge by The Ascott Defendants and Whitestone Savings, F.A. to Plaintiffs' Cause of Action under Section 17(a) of the Securities Act of 1933, 15 U.S.C. § 77q(a)*

■ To date, neither the United States Supreme Court nor the Third Circuit Court of Appeals has directly addressed the issue of whether a private right of action exists under section 17(a) of the Securities Act of 1933, 15 U.S.C. § 77q(a). 15 U.S.C.A. § 77q(a) (West 1981) reads:

(a) It shall be unlawful for any person in the offer or sale of any securities by the use of any means or instruments of transportation or communication in interstate commerce or by the use of the mails, directly or indirectly—

(1) to employ any device, scheme, or artifice to defraud, or

(2) to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(3) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser.

Most District Courts within the Third Circuit, however, have refused to recognize a private cause of action under this section. *See, e.g., In re Bexar County Health Facility Development Corporation Securities Litigation*, 125 F.R.D. 625 (E.D.Pa. 1989); *Metropolitan International, Inc. v. Alco Standard Corp.*, 657 F.Supp. 627 (M.D.Pa.1986); *Mursau Corp. v. Florida Penn Oil & Gas, Inc.*, 638 F.Supp. 259 (W.D.Pa.1986), *aff'd mem.*, 813 F.2d 398 (3d Cir.1987); *Ethanol Partners Accredited v. Wiener, Zuckerbrot, Weiss & Brecker*, 617 F.Supp. 300 (E.D.Pa.1985); *Kimmel v. Peterson*, 565 F.Supp. 476 (E.D.Pa.1983).

*Kimmel*, 565 F.Supp. 476, the first lower court in this circuit to address the issue, found that an implied right of action under section 17(a) was contrary to the second and third parts of the Supreme Court's test

for an implied right of action found in *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975).

In *Cort*, 422 U.S. 66, 95 S.Ct. 2080, the Supreme Court enunciated the following test:

> In determining whether a private remedy is implicit in a statute not expressly providing one, several factors are relevant. First, is the plaintiff 'one of the class for whose *especial* benefit the statute was enacted,' ...—that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? ... Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? ... And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law?....

*Id.* at 78, 95 S.Ct. at 2088 (citations omitted) (emphasis in original).

With regard to legislative intent, the court in *Kimmel* found that the legislative history indicated that sections 11 and 12 of the Securities Act of 1933 were viewed as the only civil liability provisions in the statute. Moreover, said the *Kimmel* court: "[T]he existence of express remedies within the same statute militates against a finding of Congressional intent to imply further remedies." *Kimmel*, 565 F.Supp. at 486. Noting that section 17(a) is sufficiently broad to cover virtually all activity addressed by sections 11 and 12 of the Securities Act of 1933 and that section 17(a) does not have the internal restrictions and defenses found in sections 11 and 12, the *Kimmel* court stated: "Thus, if a private right of action were to be implied under section 17(a), it would become the preferable remedy, rendering sections 11 and 12 entirely superfluous. The complex scheme which Congress wove in the express civil liability sections would be totally undermined." *Id.* at 487. The court also ob-

served: "As noted earlier, if *Aaron v. SEC*, [446 U.S. 680, 100 S.Ct. 1945, 64 L.Ed.2d 611 (1980) ], is any indicator, scienter will not be required under section 17(a)(2), and (a)(3). Therefore, the implication of a private remedy under section 17(a) would also undermine the Supreme Court's efforts to narrow the scope of a section 10(b) cause of action." *Id.*

Nor did the *Kimmel* court find the implication of a private cause of action consistent with the underlying purposes of the statutory scheme. The court said:

> In *Piper v. Chris–Craft Industries*, 430 U.S. 1, 97 S.Ct. 926, 51 L.Ed.2d 124 (1977), the court phrased the inquiry in terms of whether the legislative purposes "are likely to be undermined absent private enforcement" or whether it "is necessary to effectuate Congress' goals." 430 U.S. at 25, 26, 97 S.Ct. at 941. Measured against any of those standards, an asserted private right of action under section 17(a) fails. Rendering sections 11 and 12 effectively impotent is neither necessary to, nor consistent with, the legislative purposes of the 1933 Act. In those sections, Congress accorded aggrieved individuals private remedies, limiting these remedies as it saw fit. The broader sweeping provisions of section 17(a) were meant to be used and are still available for purposes of SEC enforcement.

*Id.* at 488.

We find the rationale behind the *Kimmel* court's reluctance to imply a private cause of action under section 17(a) to be cogently expressed. We, therefore, also decline to imply a private cause of action under this section of the Securities Act of 1933. Accordingly, plaintiffs' claims under this statute will be dismissed.

(4.) *Challenge of Defendants Whitestone Savings, F.A. and Firemen's Insurance Co. of Newark, New Jersey to Plaintiffs' Claims under Section 15 of the Securities Act of 1933, 15 U.S.C. § 77o*

Since the plaintiffs, in their "Combined Response to Defendants' Motions to Dis-

miss And/Or For Summary Judgment" (Document 19, p. 28) disclaim any intention of holding Whitestone Savings and Firemen's Insurance Company of Newark, New Jersey liable as "controlling persons" under section 15 of the Securities Act of 1933, 15 U.S.C. § 77*o*,[3] that part of the defendants' motion to dismiss which pertains to any claims against them based upon this statute will be granted.

### (5.) *The Ascott Defendants' Defense Based on the Statute of Limitations*

■ The Ascott defendants argue that Counts One, Two, and Five (Securities and Exchange Act of 1934; Securities Act of 1933; and State Securities Act) are barred by the statute of limitations and, therefore, fail to state a claim upon which relief may be granted. The applicable limitations period for claims under Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b–5 promulgated thereunder is one year after the plaintiff discovers the facts constituting the violation, and in no event more than three years after the violation occurred. *In re Data Access Systems Securities Litigation*, 843 F.2d 1537, 1550 (3d Cir.) *cert. denied*, 488 U.S. 849, 109 S.Ct. 131, 102 L.Ed.2d 103 (1988). The same limitations period applies to section 12(2) of the Securities Act of 1933, pursuant to section 13 of that act. 15 U.S.C. § 77m.[4]

In the case of the Pennsylvania Securities Act of 1972, an action under § 1–501 or § 1–503 must be brought "before the expiration of four years after the act or transaction constituting the violation or the expiration of one year after the plaintiff receives actual notice or upon the exercise of reasonable diligence should have known of the facts constituting the violation, whichever shall first expire." Pa.Stat.Ann. tit. 70, § 1–504(a) (Purdon Supp.1990).

■ In the case at bar, the original complaint was filed on November 22, 1988. (An amended complaint, making only minor changes, was filed on December 9, 1988). According to the allegations in both documents, the plaintiffs purchased their interests in Orlando Investors "in 1985". Also, paragraph 46 of the original complaint and paragraph 49 of the amended complaint both state:

> Ascott, Asbell, Cottone and Ingerman, general partners of Orlando Investors held the aforementioned cash payments in escrow accounts until closing on or after December 20, 1985. Up to that approximate date, all investors were entitled to have their funds returned to them. On or about that date, the funds were taken from the escrow account and applied to the sale of the limited partnership interests.

Furthermore, paragraph 68 of the original complaint and paragraph 70 of the amended complaint read:

> Plaintiffs did not discover, and could not have discovered, in the exercise of reasonable diligence, the untrue statements and omissions before March, 1988 as Defendants hid the seriousness of the financial situation of Orlando Investors until the filing by Orlando Investors of a petition for reorganization under Chapter 11 of the Bankruptcy Code in March of 1988.

---

**3.** 15 U.S.C.A. § 77*o* (West 1981) reads:

> Every person who, by or through stock ownership, agency, or otherwise, or who, pursuant to or in connection with an agreement or understanding with one or more other persons by or through stock ownership, agency, or otherwise, controls any person liable under sections 77k or 77*l* of this title, shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person had no knowledge of or reasonable ground to believe in the existence of the facts by reason of which the liability of the controlled person is alleged to exist.

**4.** 15 U.S.C.A. § 77m (West 1981) reads, in pertinent part:

> No action shall be maintained to enforce any liability created under section 77k or 77*l*(2) of this title unless brought within one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence.... In no event shall any such action be brought to enforce a liability created ... under section 77*l*(2) of this title more than three years after the sale.

Construing the allegations in the complaint in the light most favorable to the plaintiff, as we must in a motion to dismiss under Fed.R.Civ.P. 12(b)(6), we find that the plaintiffs have properly alleged compliance with that part of the relevant statutes of limitations which requires bringing of suit within one year of discovery of the facts constituting the securities violation. The filing of the complaint also took place within four years of the "violation", *i.e.,* the sale of the securities, so as to comply with the limitations period found in the Pennsylvania Securities Act of 1972. The only question remaining then is whether the plaintiffs have properly alleged compliance with that part of the Federal limitations period, found in *In re Data Access Systems Securities Litigation,* 843 F.2d 1537, which requires that an action be brought "in no event more than three years after such violation." *Id.* at 1550.

■ Determining when this three-year period commences in the case at bar involves asking when the sale of securities actually occurred. The Ascott defendants cite to *Brantley v. E.F. Hutton & Co.,* 710 F.Supp. 135 (E.D.Pa.1989), *appeal dismissed,* 904 F.2d 693 (3d Cir.1990), as recent relevant authority on this issue. In *Brantley,* the District Court held that the date of the plaintiffs' execution of the Subscription Agreement and tender of their payment marked the date of the sale. In reaching this conclusion, the *Brantley* court cited to prevailing case law:

The Brantleys' recital that the 'actual purchase' occurred not 'in mid 1981' but when the 'subscription [agreement was] accepted' is at odds with prevailing law. The sale of securities under 12(2) 'occurs, and the statute begins to run, at the time plaintiff fixes his rights and obligations by executing the investment contract which is alleged to constitute the security.' *Nielsen v. Professional Financial Management, Ltd.,* 682 F.Supp. 429, 437 (D.Minn.1987); *accord Radiation Dynamics, Inc. v. Goldmuntz,* 464 F.2d 876, 891 (2d Cir.1972) (marking the point in 10(b) actions as that at 'which the parties obligated themselves to perform

what they had agreed to perform even if the formal performance of their agreement is to be after a lapse of time'); *Slagell v. Bontrager,* 616 F.Supp. 634, 636 (W.D.Pa.1985) (12(1) cause of action ran from no later than the date of purchaser's check), *aff'd without opinion,* 791 F.2d 921 (3d Cir.1986).

*Id.* at 140.

The court, in finding that the plaintiffs had made an "irrevocable" commitment to purchase a limited partner's interest on the date they had executed the Subscription Agreement and had written a check, cited to the Subscription Agreement itself. That document contained language to the effect that "the undersigned hereby agrees that this subscription shall be irrevocable" and "[t]he dollar amount so subscribed is hereby irrevocably tendered as a contribution to the capital of the Partnership."

We note an important distinction in the instant case. According to the allegations in the complaint, the plaintiffs' payments were held in escrow until December 20, 1985 and, until that date, all the investors were entitled to have their funds returned to them. After that date, the monies were alleged to have been taken out of escrow and applied to the sale of the interests in the limited partnership. Thus, on the face of the complaint, there was nothing "irrevocable" about this transaction until December 20, 1985. In *Hill v. Equitable Bank, National Association,* 599 F.Supp. 1062 (D.Del.1984), the District Court stated:

In general, under the federal securities laws, a purchase or sale of securities occurs on the date that a party enters into a binding commitment to undertake a securities transaction, even though full performance of the transaction does not occur until a later date. *See Radiation Dynamics, Inc. v. Goldmuntz,* 464 F.2d 876, 890–91 (2d Cir.1972).

*Id.* at 1072.

Looking at the allegations in the instant complaint, we would say that the commitment to purchase the interests did not become "binding" until December 20, 1985, the date after which the investors could no longer withdraw their funds. Since the

original complaint was filed on November 22, 1985, this puts the plaintiffs within the three-year statute of limitations for the Federal securities laws. We, therefore, find that the allegations in the complaint are sufficient to withstand a motion to dismiss based upon statutes of limitations.

**(6.)** *The Ascott Defendants' Challenge to the Plaintiffs' Allegations of Fraud Under Fed.R.Civ.P. 9(b)*

The Ascott defendants argue that the amended complaint should be dismissed because of the plaintiffs' failure to allege fraud with the specificity required by Fed. R.Civ.P. 9(b). That rule provides: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." The Third Circuit has held that focusing exclusively on the particularity language in Rule 9(b) " ' "is too narrow an approach and fails to take account of the general simplicity and flexibility contemplated by the rules" '." *Seville Industrial Machinery Corp. v. Southmost Machinery Corp.*, 742 F.2d 786, 791 (3d Cir.1984), *cert. denied*, 469 U.S. 1211, 105 S.Ct. 1179, 84 L.Ed.2d 327 (1985) (*quoting Christidis v. First Pennsylvania Mortgage Trust*, 717 F.2d 96, 100 (3d Cir.1983), *in turn quoting* 5 C. Wright & A. Miller, *Federal Practice and Procedure*, § 1298, at 407 (1969)). Rule 9(b) must be harmonized with Rule 8(a)(2) which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." *See Denny v. Carey*, 72 F.R.D. 574, 578 (E.D.Pa.1976).

In *Seville Industrial Machinery Corp.*, 742 F.2d 786, the Third Circuit articulated the type of particularity required by Rule 9(b). In reversing a District Court's dismissal of a RICO complaint on Rule 9(b) grounds, the court rejected the date, place, and time requirements argued for here by defendants:

Rule 9(b) requires plaintiffs to plead with particularity the 'circumstances' of the alleged fraud in order to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior. It is certainly true that allegations of 'date, place or time' fulfill these functions, but nothing in the rule requires them. Plaintiffs are free to use alternative means of injecting precision and some measure of substantiation into their allegations of fraud.

*Id.* at 791.

The requirements of Rule 9(b) are met when there is "sufficient identification of the circumstances constituting fraud so that the defendant can prepare an adequate answer to the allegations." *Denny*, 72 F.R.D. at 578. The question we face, therefore, is whether the plaintiffs have injected precision and some measure of substantiation into their complaint sufficient to allow defendants to prepare an adequate answer to the allegations.

▮▮▮ The defendants argue that the plaintiffs have not sufficiently pleaded the written misrepresentations and omissions claimed in the amended complaint. In the amended complaint, however, the plaintiffs detail the alleged written misrepresentations and omissions made by the Ascott defendants in the Offering Memorandum about the proposed investment opportunity. (Amended Complaint, ¶¶ 30, 40, and 41). Reference to specific documents such as the Offering Memorandum, satisfies Rule 9(b)'s requirements regarding the misrepresentations and omissions, including when and where given. *See Luce v. Edelstein*, 802 F.2d 49, 55 (2d Cir.1986).

▮▮▮ The Ascott defendants also allege an insufficiency in pleading the oral misrepresentations. Specifically, they allege failure to identify what oral representations were made to any plaintiff, by whom and when such representations were made, and in what manner such representations were false or misleading. Paragraph 42 of the amended complaint reads:

Defendant general partners and their agents made oral representations over intrastate and interstate telephone wires and in person to prospective investors, including certain Plaintiffs, that Orlando

Investors would be a valuable investment opportunity even without the expected tax benefits.

Here the plaintiffs have alleged who made the oral representations, how they were made and to whom, and what the representation was. How it was misleading or false would be evident from a comparison of the paragraphs found elsewhere in the amended complaint, *e.g.*, in amended complaint paragraph 41. We believe that this allegation concerning the oral misrepresentation has been made with "sufficient identification of the circumstances constituting fraud so that the defendant can prepare an adequate answer to the allegations." *Denny*, 72 F.R.D. at 578. We, therefore, reject the Ascott defendants' challenge based upon Fed.R.Civ.P. 9(b).

### (7.) *The Ascott Defendants' Challenge to the Plaintiffs' RICO Claims*

The Ascott defendants argue that the plaintiffs' RICO claims do not satisfy the requirements of Fed.R.Civ.P. 9(b) and that the amended complaint fails to state a claim under 18 U.S.C. § 1962(b).[5] With regard to the Ascott defendants' challenge under Fed.R.Civ.P. 9(b), it should be noted that requirements of Rule 9(b) are not automatically increased because a RICO claim is involved. The Third Circuit in *Seville Industrial Machinery Corp.*, 742 F.2d 786, reversed the District Court's dismissal of a RICO count on Rule 9(b) grounds. The court laid out the requirement that Rule 9(b) sought only the sufficient injection of precision and some measure of substantiation in order to place defendants on notice of the precise misconduct with which they were charged and to prevent the defendants from being the target of spurious charges. *See also Kimmel*, 565 F.Supp. at 481 (finding that Rule 9(b) requires only slightly more than is required by Rule 8 even in a complaint that includes a RICO count). Thus, in deciding whether there is sufficient particularity in RICO actions, the

same Rule 9(b) standards we have already discussed apply.

The defendants' arguments based on Rule 9(b) with regard to the RICO count bear upon the predicate fraudulent acts alleged by the plaintiffs because only those contain charges of fraud. Plaintiffs alleged two types of predicate fraudulent activity in paragraph 91 of the amended complaint:

> 91. The Defendants' actions constitute racketeering activity within the meaning of 18 U.S.C. Sections 1961(1)(B), 1961(1)(D) and a pattern of racketeering activity within the meaning of 18 U.S.C. Section 1961(5).

Section 1961(1)(D) classifies "fraud in the sale of securities" as a predicate act. Previously, in the amended complaint, the plaintiffs had detailed the circumstances surrounding the alleged securities fraud. We have already found these allegations to have been sufficiently pleaded to withstand the defendants' prior challenge under Rule 9(b) and we need not reiterate our conclusions here.

As for the mail frauds, specific mailings are indicated in the complaint. (Amended Complaint, ¶ 90). The mailings attributable to each defendant are specified. Each mailing was allegedly a part of a fraudulent scheme, the purpose of which was "for Defendants to raise capital for the purchase of Pacesetter Apartments whereby Defendants would profit due to such sale and fees associated with the solicitation and management of such property...." (Amended Complaint, ¶ 89). This is sufficient pleading of fraudulent activity for defendants to frame an answer; Rule 9(b) is satisfied.

With regard to the Ascott defendants' contention that the amended complaint fails to state a claim under 18 U.S.C. § 1962(b), we first must consider the language of that statute. It reads:

> It shall be unlawful for any person through a pattern of racketeering activi-

5. Only the Ascott defendants are alleged to have violated 18 U.S.C. § 1962(b) in paragraph 95 of the amended complaint.

ty or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

The Ascott defendants argue that the plaintiffs' RICO claim must fail because there is no causal link between the plaintiffs and the conduct said to violate § 1962(b), *i.e.*, "through a pattern of racketeering activity ... acquir[ing] or maintain[ing] ... any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate ... commerce."

The Supreme Court in *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985), refused to find any kind of separate "racketeering injury" requirement in the RICO statute. The court said:

> Section 1964(c) authorizes a private suit by "[a]ny person injured in his business or property by reason of a violation of § 1962." Section 1962 in turn makes it unlawful for "any person"—not just mobsters—to use money derived from a pattern of racketeering activity to invest in an enterprise, to acquire control of an enterprise through a pattern of racketeering activity, or to conduct an enterprise through a pattern of racketeering activity. §§ 1962(a)–(c). If the defendant engages in a pattern of racketeering activity in a manner forbidden by these provisions, and the racketeering activities injure the plaintiff in his business or property, the plaintiff has a claim under Section 1964(c).

*Id.* at 495, 105 S.Ct. at 3284.

■ An analysis of the complaint shows that plaintiffs did allege proper causation for the injury running from defendants' violation of § 1962(b). Plaintiffs alleged that the Ascott defendants, through a pattern of racketeering activity, acquired interests in or control of Orlando Investors, in violation of 18 U.S.C. § 1962(b). (Amended Complaint, ¶ 95). Plaintiffs alleged that in so acquiring such interests, defendants disseminated materially false and misleading statements to plaintiffs and other investors in order to form Orlando. This was part of the racketeering activity alleged in the complaint. (*See* Amended Complaint, ¶ 91). It was through the frauds, which attracted the funds of plaintiffs and other investors, that a capitalized Orlando Investors was formed and that the general partners were able to gain their piece of the partnership. Thus, the racketeering activity which violated § 1962(b) is the activity that caused plaintiffs' injuries.

The RICO statute at 18 U.S.C.A. § 1964(c) (West 1984) reads: "Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee." Plaintiffs have properly alleged an injury "by reason of" the Ascott defendants' violations of § 1962(b).

**(8.) *Surety Firemen's Insurance Company of Newark, New Jersey's Challenge to the Complaint***

■ The gravamen of the plaintiffs' claims against the Surety, Firemen's Insurance Company of Newark, New Jersey ("Firemen's"), is that it aided and abetted the allegedly fraudulent offer and sale of the limited partnership interests to the investors. The plaintiffs contend that: Firemen's aided and abetted violations by the Ascott defendants of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) and Rule 10b–5, promulgated thereunder by the Securities and Exchange Commission, 17 C.F.R. § 240.10b–5 (Count I); actively participated in and aided and abetted the Ascott defendants' violations of Section 12(2) of the Securities Act of 1933, 15 U.S.C. § 77*l*(2) (Count Two); acted as an unspecified participant in the commission of an alleged common law fraud and conspiracy (Count Three); and violated the Pennsylvania Securities Act of 1972, Pa. Stat.Ann. tit. 70 §§ 1–101 *et seq.* (Purdon Supp.1990) and the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961 *et seq.* (Counts Four and Five).

In its brief, Firemen's addresses only whether the complaint states a claim that it aided and abetted an alleged Section 10(b) violation and a claim that it actively participated in or aided and abetted an alleged Section 12(2) violation. Firemen's also directs the court's attention to the memorandum of law submitted by the Ascott defendants in support of their motion in the case at bar. Firemen's says that it joins in the Ascott defendants' motion.

Since the plaintiffs have already agreed to drop their claim against Firemen's under section 12(2) of the Securities Act of 1933, 15 U.S.C. § 77*l*(2), we need not address the sufficiency of the plaintiffs' allegations under this statute. Since Firemen's joins in the arguments and motion made by the Ascott defendants and since we have already addressed those arguments elsewhere in this opinion, we need not reiterate them here. Therefore, we need only address Firemen's arguments as they pertain to the aiding and abetting claim.

With regard to the allegations under Count I, dealing with the plaintiffs' contention that Firemen's aided and abetted the Ascott defendants in violations of section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) and Rule 10b–5, 17 C.F.R. § 240.10b–5, we note that the Third Circuit has identified three necessary elements of a claim for aider and abettor liability:

> (1) that an independent wrong exist; (2) that the aider and abettor know of that wrong's existence; and (3) that substantial assistance be given in effecting that wrong.

*Walck v. American Stock Exchange, Inc.,* 687 F.2d 778, 791 (3d Cir.1982), *cert. denied,* 461 U.S. 942, 103 S.Ct. 2118, 77 L.Ed.2d 1300 (1983) (*quoting Landy v. F.D.I.C.,* 486 F.2d 139, 162–63 (3d Cir.1973), *cert. denied,* 416 U.S. 960, 94 S.Ct. 1979, 40 L.Ed.2d 312 (1974)).

In the instant case, the plaintiffs have alleged the existence of an independent wrong. Count I details how each defendant allegedly violated the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) and Rule 10b–5. (*See* Amended Complaint, ¶¶ 57–70). They have also alleged knowledge of that wrong on the part of Firemen's. (*See* Amended Complaint, ¶ 67). With regard to the "substantial assistance" requirement of the test enunciated in *Walck,* 687 F.2d at 791, it must be remembered that, in addition to alleging that Firemen's issued surety bonds to Whitestone on behalf of the investors as part of the overall financing scheme described in the complaint, the plaintiffs have also alleged Firemen's participation in the issuance of the Offering Memorandum as well. (Amended Complaint, ¶ 45). We are only at the threshold of this litigation. We believe that it would be preferable to decide the substantiality of Firemen's assistance at a later date, for example, upon a motion for summary judgment. We, therefore, shall deny Firemen's motion to dismiss as it pertains to the aiding and abetting claim.

### (9.) *Whitestone Savings, F.A.'s Challenge to the Complaint*

■ Defendant Whitestone Savings, F.A. ("Whitestone") moves to dismiss the amended complaint pursuant to Fed.R. Civ.P. 12(b)(1), (2), (3) and (6), and Fed.R. Civ.P. 9(b). Fed.R.Civ.P. 12(b)(1), (2), (3) and (6) pertain to the following defenses: "(1) lack of jurisdiction over the subject matter, (2) lack of jurisdiction over the person, (3) improper venue, ... (6) failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 9(b) pertains to the requirements for pleading fraud. In the alternative, Whitestone moves for summary judgment, pursuant to Fed.R.Civ.P. 56(b). Since we have already declined to consider any defendant's motion for summary judgment, we shall confine our consideration of Whitestone's motion to that part of it which pertains to Fed.R.Civ.P. 12(b)(1), (2), (3) and (6), and Fed.R.Civ.P. 9(b).

The allegations against Whitestone in the amended complaint are found at paragraphs 21, 34, 43, 44, 51, 66, 78 and 90(c). Those paragraphs read as follows:

21. Defendant, Whitestone Savings, F.A., ("Whitestone") is a corporation located at 153–17 Cross Island Parkway,

Whitestone, New York 11357, which was assigned the Recourse Notes executed by the Limited Partners, for the benefit of Orlando Investors.

34. Defendant Whitestone profited from the successful formation of the partnership and aided and abetted the above described misrepresentations, frauds, breaches and violations by either knowingly allowing the misrepresentations to be made or by negligently failing to examine the facts related to the offering at the time of the distribution of the Offering Memorandum.

43. Defendant, Whitestone, profited from the successful formation of the partnership as it was assigned at a profit the Recourse Notes executed by each plaintiff for the benefit of Orlando Investors.

44. Defendant, Whitestone, aided and abetted the aforementioned misrepresentations, frauds, breaches and violations by either knowingly or negligently participating in the issuance of the Offering Memorandum.

51. As a result of the offering, Defendant Whitestone stood to receive over $920,000.00 in interest payments.

66. Defendant Whitestone had or should have had knowledge of the fraud and acted with reckless disregard of that knowledge or lack of knowledge and aided and abetted the fraudulent acts of each individual Defendant.

78. Defendant Whitestone actively participated, and aided and abetted the offer and sale of securities to Plaintiffs by the use or means of instruments of transportation or communication in interstate commerce or the mails by means of prospectuses and oral communication which included untrue statements of material facts and omitted to state material facts necessary in order to make the statements, in light of the circumstances under which they were made, not misleading (the purchasers not knowing of such untruths or omissions).

90. Defendants, in furtherance of their scheme to defraud the limited partners, received, posted and knowingly caused others to post correspondence through the United States Postal Service and transmitted, and knowingly caused others to transmit by means of live or radio communication in interstate commerce, writing, signs, signals or sounds for the purpose of executing or attempting to execute said scheme or artifice in violation of 18 U.S.C. Sections 1341 and 1342. Specifically, but not exclusively:

. . . .

c). Whitestone sent letters to all Plaintiffs reminding each that Whitestone was the holder of the Promissory Notes and that the next capital contribution for Orlando Investors was due and payable on June 1, 1988;. . . .

With regard to the securities law violations, Whitestone argues that the plaintiffs have failed to allege aider and abettor liability sufficiently.[6] Since we have already dismissed the plaintiffs' claims under sections 12(2) and 17(a) of the Securities Act of 1933, we shall concern ourselves only with aiding and abetting liability under section 10(b) of the Securities Exchange Act of 1934 and Rule 10b–5.

As we have already noted in our discussion of Firemen's challenge to the complaint, aider and abettor liability requires that three elements be alleged:

(1) that an independent wrong exist;

(2) that the aider and abettor know of that wrong's existence; and

(3) that substantial assistance be given in effecting that wrong.

*Walck*, 687 F.2d at 791.

With regard to the first requirement, we believe that the plaintiffs have sufficiently alleged violations of the securities laws,

---

**6.** Whitestone also argues that, if the plaintiffs seek to impose primary liability upon Whitestone for a securities law violation, they must amend their complaint to state such a claim expressly and must set forth the factual basis therefor in compliance with Fed.R.Civ.P. 9(b) and Fed.R.Civ.P. 12(b)(6). The plaintiffs, in their brief, state that they have alleged aider and abettor liability for Whitestone. They evidently do not intend any other kind of liability for Whitestone in their securities law allegations. We shall, therefore, confine our attention to the sufficiency of the pleading as it pertains to Whitestone's aider and abettor liability.

including violations of Section 10(b) and Rule 10b–5. The plaintiffs have also alleged Whitestone's knowledge of the violation. (*See* Amended Complaint, ¶¶ 34, 44, and 66). Finally, allegations of substantial assistance appear in the amended complaint. With regard to the requirement of substantial assistance, Whitestone is alleged not only to have taken an assignment of the recourse notes executed by the limited partners for the benefit of Orlando Investors, but is also alleged to have allowed the misrepresentations to be made [7] and to have participated in the issuance of the Offering Memorandum. (*See* Amended Complaint, ¶¶ 21, 34, 43 and 44). As we have already stated in our treatment of Firestone's challenges to the complaint, we are only at the beginning stages of the instant case. We would prefer to let a decision regarding the substantiality of Whitestone's assistance await a later date.

Whitestone also argues that the plaintiffs have not met the requirements of pleading fraud under Fed.R.Civ.P. 9(b). In the complaint, Whitestone is alleged to have aided and abetted the securities fraud. As we have stated elsewhere in this opinion, we believe that the fraudulent activity alleged in the complaint has been set forth with the requisite particularity and that Whitestone's aiding and abetting liability has been properly alleged.

■ Whitestone has also moved to dismiss for failure adequately to plead compliance with the statute of limitations of both Federal and state securities laws.[8] Whitestone relies upon *Alfaro v. E.F. Hutton & Co., Inc.*, 606 F.Supp. 1100 (E.D.Pa.1985) in which the District Court said:

> [W]hen the statute which creates the cause of action contains a statute of limitations, the plaintiff must plead facts which show that the claim is not time barred under that statute. '[I]n order

properly to allege a claim under § 12(2), the complaint must set forth the time and circumstances of the discovery of the fraudulent statements, the reasons why discovery was not made earlier if more than one year has elapsed since the fraudulent conduct occurred, and the diligent efforts which plaintiff undertook in making or seeking such discovery.' *Hill v. Der*, 521 F.Supp. 1370, 1389 (D.Del. 1981). *See e.g., Caliber Partners, Ltd. v. Affeld*, 583 F.Supp. 1308 (N.D.Ill.1984); *Adair v. Hunt International Resources Corp.*, 526 F.Supp. 736 (N.D.Ill.1981); *Woods v. Homes & Structures of Pittsburgh, Kansas*, 489 F.Supp. 1270 (D.Kan.1980); *Kroungold v. Triester*, 407 F.Supp. 414 (E.D.Pa.1975); *Kramer v. Scientific Control Corporation*, 352 F.Supp. 1175 (E.D.Pa.1973).

*Id.* at 1111–1112.

In paragraph 82 of the amended complaint the plaintiffs have alleged:

> Plaintiffs did not discover, and could not have discovered, in the exercise of reasonable diligence, the untrue statements and omissions before March, 1988, as Defendants hid the seriousness of the financial situation of Orlando Investors until the filing by Orlando Investors of a petition for reorganization under Chapter 11 of the Bankruptcy Code in March of 1988.

The plaintiffs have fixed a time for their discovery of the fraud, *i.e.*, March, 1988, the date of Orlando Investors' filing for bankruptcy, and their reasons for their inability to discover the fraud sooner or to pursue it with diligence, *i.e.*, the defendants' concealment of the seriousness of their financial situation until their filing for bankruptcy. We believe that these allegations are sufficient to withstand a motion to dismiss.

---

**7.** "[I]naction ... may provide a predicate for [aider-abettor] liability where the plaintiff demonstrates that the aider-abettor *consciously* intended to assist in the perpetration of a wrongful act. *Gould v. American–Hawaiian Steamship Co., supra*, 535 F.2d [761] at 780 [3d Cir. 1976]; *Rochez II [Rochez Brothers, Inc. v. Rhoades], supra*, 527 F.2d [880] at 889 [3d Cir.

1975]." *Monsen v. Consolidated Dressed Beef Co., Inc.*, 579 F.2d 793, 800 (3d Cir.) *cert. denied*, 439 U.S. 930, 99 S.Ct. 318, 58 L.Ed.2d 323 (1978) (emphasis in original).

**8.** Whitestone has also joined in the Ascott defendants' arguments regarding timeliness of suit. We have rejected those arguments *supra*.

Whitestone also raises several challenges to the sufficiency of the RICO allegations in Count IV of the complaint, specifically to the sufficiency of the allegations pertaining to 18 U.S.C. §§ 1962(c) and (d). 18 U.S. C.A. § 1962(c) (West 1984) reads:

It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C.A. § 1962(d) (West Supp.1990) reads: "It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section."

■■■ With regard to 18 U.S.C. § 1962(c), Whitestone argues that, in order for the plaintiffs to hold them in under this section of RICO, they will have to allege that Whitestone was "employed by or associated with" an "enterprise" and that it "conduct[ed] or participate[d]" in the conduct of such enterprise's affairs through a "pattern" of "racketeering activity." We do find the plaintiffs' RICO allegations insufficient with regard to Whitestone. Whitestone is referred to specifically only in paragraph 90(c) of the amended complaint, which reads:

Defendants, in furtherance of their scheme to defraud the limited partners, received, posted and caused others to post correspondence through the United States Postal Service and transmitted, and knowingly caused others to transmit by means of live or radio communication in interstate commerce, writing, signs, signals or sounds for the purpose of executing or attempting to execute said scheme or artifice in violation of 18 U.S.C. Sections 1341 and 1342. Specifically, but not exclusively:

. . . .

c). Whitestone sent letters to all Plaintiffs reminding each that Whitestone was the holder of the Promissory Notes and that the next capital contribution for Orlando Investors was due and payable on June 1, 1988;. . . .

Other paragraphs refer only to "defendants" or "all defendants" without individualizing them or their actions.

We think that Whitestone is entitled to a more specific description of how it merits RICO liability under 18 U.S.C. § 1962(c). Although we do not agree with Whitestone that the plaintiffs must now plead each element of an "enterprise", *see Seville*, 742 F.2d at 789–790, we do believe that the plaintiffs could provide more detail as to how Whitestone was "employed by" or "associated with" the "enterprise(s)". Also, how were the letters, referred to in paragraph 90(c), part of the mail fraud which forms the "racketeering activity"? How do they form a "pattern" recognized under the case law? We do not believe that the plaintiffs can simply combine Whitestone with "all defendants" and expect Whitestone to be apprised of the conduct giving rise to liability under 18 U.S.C. § 1962(c).

■■■ We also agree that Whitestone's liability has been insufficiently alleged under 18 U.S.C. § 1962(d). The conspiracy allegation is found at paragraph 99 of the amended complaint. It reads: "All defendants conspired together to violate 18 U.S.C. § 1962(b) and 1962(c) in violation of 18 U.S.C. Section 1962(d)." First, we have already pointed out the deficiencies which exist in plaintiffs' attempts to hold Whitestone liable under 18 U.S.C. § 1962(c) itself. Second, as the court said in *Alfaro*, 606 F.Supp. 1100, regarding similar conclusory allegations:

These allegations do not satisfy the minimal pleading requirements of Rule 8. It is not necessary or appropriate, for the complaint to contain evidentiary details regarding the conspiracy, but plaintiffs must provide defendant and this court with some factual recitation which establishes a basis for the legal conclusion reached in paragraph 34 and 36. Plaintiffs need not identify all members of the alleged conspiracy or describe the conspiracy and its formation in great detail. Plaintiffs should, however, describe the general composition of the conspiracy,

some or all of its broad objectives, and defendant's general role in that conspiracy.

*Id.* at 1117–1118.

We think that the plaintiffs in the instant case will have to provide the sort of specificity described in *Alfaro*. Accordingly, we shall dismiss plaintiffs' RICO claims against Whitestone under 18 U.S.C. §§ 1962(c) and (d). In accordance with *District Council 47, American Federation of State, County and Municipal Employees, AFL–CIO v. Bradley*, 795 F.2d 310 (3d Cir.1986), however, we do so with leave for the plaintiffs to amend their complaint regarding Whitestone and its liability under the RICO statute.

The next challenge Whitestone raises is to jurisdiction. Upon the assumption that the court would grant its motion to dismiss regarding the causes of action based upon federal law, Whitestone has argued that the court would have no subject matter jurisdiction over the pendent state law claims, since no diversity of citizenship exists. We, of course, have not dismissed the claim based upon aiding and abetting a violation of the Federal securities laws. We, therefore, must deny Whitestone's motion under Fed.R.Civ.P. 12(b)(1). We also see no reason why we should relinquish consideration of the pendent state law claims.

■ Whitestone has also argued a lack of personal jurisdiction since it claims that it has insufficient contacts with Pennsylvania. Since Whitestone is alleged to have aided and abetted a violation of section 10(b) of the Securities Exchange Act of 1934 and Rule 10b–5 promulgated thereunder, it is necessary to examine section 27 of that Act which deals with jurisdiction:

The district courts of the United States and the United States courts of any Territory or other place subject to the jurisdiction of the United States shall have exclusive jurisdiction of violations of this chapter or the rules and regulations thereunder, and of all suits in equity and actions at law brought to enforce any liability or duty created by this chapter or the rules and regulations thereunder.

Any criminal proceeding may be brought in the district wherein any act or transaction constituting the violation occurred. Any suit or action to enforce any liability or duty created by this chapter or rules and regulations thereunder, or to enjoin any violation of such chapter or rules and regulations, may be brought in any such district or in the district wherein the defendant is found or is an inhabitant or transacts business, and process in such cases may be served in any other district of which the defendant is an inhabitant or wherever the defendant may be found. Judgments and decrees so rendered shall be subject to review as provided in sections 1254, 1291, 1292, and 1294 of Title 28. No costs shall be assessed for or against the Commission in any proceeding under this chapter brought by or against it in the Supreme Court or such other courts.

15 U.S.C.A. § 78aa (West Supp.1990).

Whitestone's argument is similar to that made by the defendant Boynton in *Merrill Lynch, Pierce, Fenner & Smith v. Rajcher*, 609 F.Supp. 291 (S.D.N.Y.1985). Boynton, too, was alleged to have aided and abetted a violation of section 10(b) of the Securities Exchange Act of 1934 and Rule 10b–5. He argued that, since he was a California resident and had had no contact with the State of New York regarding the transaction in question, the court had no personal jurisdiction over him. The *Rajcher* court disagreed, saying: "Personal jurisdiction over Boynton is based on nationwide service of process, authorized by Section 27 of the Exchange Act, 15 U.S.C. § 78aa, which provides that process may be served in any district of which the defendant is an inhabitant or wherever the defendant may be found." *Id.* at 293. The court further explained:

In asserting nationwide service, the constraints of the due process clause of the Fifth Amendment still apply. "Thus, the service authorized by statute must be reasonably calculated to inform the defendant of the pendency of the proceedings in order that he may take advantage of the opportunity to be heard in his

defense." *Mariash v. Morrill*, 496 F.2d 1138, 1143 (2d Cir.1974). The contacts necessary for jurisdiction are between the defendant and the United States because it is the United States, and not the State of New York, which exercises its jurisdiction. *Id.* at 1143; *Garner v. Enright*, 71 F.R.D. 656, 660 (E.D.N.Y.1976). Since Boynton resides within the territorial boundaries of the United States and service of process was sufficiently effective, the requirements for personal jurisdiction over him are satisfied.

*Id.*

Whitestone has not argued ineffectiveness of the service of process. Whitestone is a corporation located in New York. We, therefore, believe that personal jurisdiction over Whitestone exists under 15 U.S.C. § 78aa. Accordingly, Whitestone's motion to dismiss under Fed.R.Civ.P. 12(b)(2) shall be denied.

 Furthermore, Whitestone has challenged venue in the Eastern District of Pennsylvania. But, under 15 U.S.C. § 78aa, venue is proper as to *all* defendants in any district where it is alleged that any one defendant has committed acts that are violative of this chapter and in furtherance of the alleged illegal scheme. *In re Penn Central Securities Litigation*, 338 F.Supp. 438 (E.D.Pa.1972). In the instant case, the location of defendant Ascott Investment Corporation is given as 1530 Chestnut Street, Suite 500, in Philadelphia, Pennsylvania. Defendants Cottone, Asbell and Ingerman are alleged to be shareholders and officers of that corporation (*See* Amended Complaint, ¶¶ 16, 17, 18 and 19). The complaint alleges that these "Ascott defendants" made both oral and written misrepresentations to the plaintiffs. Surely, the making of such misrepresentations by defendants who are alleged to be located in a major city within the Eastern District of Pennsylvania would constitute an act that violated the securities law and furthered the illegal scheme. Thus, venue would be proper here as to all defendants, including Whitestone. We shall, therefore, deny Whitestone's motion to dismiss under Fed.R.Civ.P. 12(b)(3).

Next, Whitestone argues, as follows, for the dismissal of the state law claims:

Plaintiffs have alleged that Whitestone aided and abetted violations of Sections 401, 501 and 503** of the Pennsylvania Securities Act—laws virtually identical to federal law (compare 70 P.S. 1–401 and 1–501 with 15 U.S.C. § 10(b) and Rule 10b–5 discussed *supra*), as well as common law fraud and conspiracy. Because these claims are all based on fraud, the requirements of Rule 9(b) apply equally to these claims. *See e.g. Ethanol Partners [Accredited v. Wiener, Zuckerbrot, Weiss & Brecher]*, *supra*, 635 F.Supp. [18] at 22 [E.D.Pa.1985]; *Todd v. Oppenheimer & Co.*, 78 F.R.D. 415, 421–423 (S.D.N.Y.1978).

Like their federal securities fraud claims, Plaintiffs' state securities and common law fraud and conspiracy claims against Whitestone are based on the same single allegation that Whitestone took an assignment of Plaintiffs' promissory notes. For the reasons stated in Points I and III *supra*, these claim [*sic*] cannot proceed on the basis of that naked fact alone. Plaintiffs have not alleged the elements of fraud, aiding and abetting or conspiracy* against Whitestone except in conclusory terms. The alleged fraudulent conduct or participation by Whitestone is not set forth. No factual basis is alleged to infer knowledge of any misrepresentations or missions. No conduct is alleged from which any agreement to defraud may be inferred. Under Rules 12(b)(6) and 9(b) the state law claims must be dismissed.

"Motion of Defendant Whitestone Savings, F.A. To Dismiss the Amended Complaint, or, in the Alternative, For Summary Judgment" (Doc. 16, pp. 54–55) (footnote omitted).

We believe that we have already addressed these issues elsewhere in this opinion, finding allegations of aiding and abetting the underlying fraudulent securities transactions to have been properly made against Whitestone. With regard to the common law conspiracy claim, the conspir-

acy allegation is found at paragraph 86 of the amended complaint in Count III:

86. Defendants intentionally, willfully, knowingly and unlawfully conspired to devise, perpetrate and execute the fraudulent schemes and devices described herein upon Plaintiffs and to deprive them of their money and property.

Unlike our consideration of the RICO conspiracy claim, we believe that the "fraudulent schemes and devices" and Whitestone's conduct therein have been sufficiently described to put Whitestone on notice as to its role. We would, therefore, not require more at this stage of the litigation.

Finally, Whitestone questions the inclusion of Whitestone as a defendant under Pa.Stat.Ann. tit. 70 § 1–503. That section pertains to "affiliates" of persons held liable for violating the state anti-fraud provisions and officers, directors, partners, employees or agents of such persons. It reads as follows, in pertinent part:

(a) Every affiliate of a person liable under section 501 or 502, every partner, principal executive officer or director of such person, every person occupying a similar status or performing similar functions, every employe of such person who materially aids in the act or transaction constituting the violation, and every broker-dealer or agent who materially aids in the act or transaction constituting the violation, are also liable jointly and severally with and to the same extent as such person, unless the person liable hereunder proves that he did not know, and in the exercise of reasonable care could not have known, of the existence of the facts by reason of which the liability is alleged to exist.

We agree with Whitestone that the plaintiffs have not properly alleged how this section pertains to it. We shall, therefore, dismiss the state claim against Whitestone under Pa.Stat.Ann. tit. 70 § 1–503 and grant the plaintiffs leave to amend the complaint, if they so desire.

An appropriate order follows.

## ORDER

AND NOW, this 6th day of March, 1991, upon consideration of the defendants' Motions to Dismiss, or in the Alternative for Summary Judgment, it is hereby ORDERED that the defendants' motions are considered as motions to dismiss. It is also ORDERED that said motions are DENIED with the following specific exceptions:

1. Upon the consent of the plaintiffs, their claims under section 12(2) of the Securities Act of 1933, 15 U.S.C. § 77*l* against Whitestone Savings, F.A. and Firemen's Insurance Company of Newark, New Jersey are hereby DISMISSED.

2. Plaintiffs' claims under section 17(a) of the Securities Act of 1933, 15 U.S.C. § 77q(a) against Ascott Investment Corporation, Michael J. Asbell, Philip S. Cottone, and M. Brad Ingerman and Whitestone Savings, F.A. are hereby DISMISSED, the court finding no private right of action under that statute.

3. Plaintiffs' claims under section 15 of the Securities Act of 1933, 15 U.S.C. § 77*o* against Whitestone Savings, F.A. and Firemen's Insurance Co. of Newark, New Jersey are hereby DISMISSED, the plaintiffs having disclaimed any intention of holding these defendants liable as "controlling persons" under this statute.

4. The following of plaintiffs' claims against Whitestone Savings, F.A. are hereby DISMISSED WITH LEAVE TO AMEND:

a). plaintiffs' claims based upon 18 U.S.C. §§ 1962(c) and (d);

b). plaintiffs' claims based upon Pa. Stat.Ann. tit. 70 § 1–503.

5. An amended complaint shall be filed in the captioned matter within twenty-one (21) days of the date of this Order.